# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2011

No. 10-30020

Lyle W. Cayce
Clerk

SEACOR HOLDINGS INC.,

Plaintiff – Appellee/Cross-Appellant

v.

COMMONWEALTH INSURANCE COMPANY,

Defendant – Appellant/Cross-Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this diversity case, Commonwealth Insurance Company appeals a grant of partial summary judgment in favor of SEACOR Holdings Inc. on an insurance contract interpretation question. The district court also granted summary judgment in favor of Commonwealth with regard to SEACOR's bad faith claims, which SEACOR now cross-appeals. We AFFIRM both judgments.

I.

SEACOR is a publicly traded Delaware corporation that owns and operates marine and aviation assets servicing the transportation and oil-and-gas

No. 10-30020

industries worldwide. Commonwealth, a Canadian corporation, furnished SEACOR with an all-risk property insurance policy for the 2005 calendar year. The matter before us involves two interweaving factual backgrounds—the first for the insurance contract interpretation and the second for bad faith claims.

A.

SEACOR's all-risk policy includes a provision denoting various deductibles contingent on the source of the damage.

> Each occurrence resulting in a claim for loss shall be adjusted separately and [Commonwealth]'s liability shall be limited to that amount by which the loss exceeds the deductible amounts shown hereunder, up to the applicable Limit of Liability.
> . . .
> (c)   In respect of loss caused directly by the peril of Windstorm, as defined: $25,000, except
> (d)   In respect of loss caused directly by the peril of a "Named Windstorm", as defined, 3% of the total insurable values . . . subject to a minimum of $50,000 per occurrence
> (e)   In respect of loss caused directly by the peril of Flood, as defined: $25,000; except Flood Zones A and V, excess maximum National Flood Insurance Program (NFIP) limits available . . . .

SEACOR and Commonwealth disagree as to whether damages from Hurricanes Katrina and Rita should be covered using only the Named Windstorm deductible or using both the Named Windstorm and Flood deductible. The parties further dispute the application of the policy's limit of liability provision, which reads:

> The Company's liability for the cumulative total of adjusted net claims resulting from any one loss, casualty, disaster or occurrence (including all costs, fees, charges and expenses)

2

No. 10-30020

shall not exceed $10,000,000.

Without increasing the policy limit, it is agreed that:

(a)    Loss caused by the peril of Flood, as defined, is subject
       to an Annual Aggregate Limit of Five Million Dollars
       ($5,000,000); . . . .

Hurricanes Katrina and Rita[1] significantly damaged SEACOR's property, leading SEACOR to seek recovery of its losses under the Commonwealth insurance plan. From the start of the adjustment process, the parties agree they worked diligently and cooperatively to determine the scope of damage and costs to repair, with Commonwealth making an advance payment to SEACOR of $1.5 million. The parties promptly resolved the loss values and settled all contractual issues except for the legal questions of which deductible and liability limit applied. Commonwealth has now paid SEACOR over $4 million for undisputed claims. SEACOR contends that Commonwealth would owe an additional $3.2 million if SEACOR's interpretation of the contract is correct.

Despite their collegiality in determining loss values, early on the parties disputed which deductibles should apply to the claims. Recognizing this tension, SEACOR filed a declaratory judgment action in August 2006 "with regard to whether the loss or damage suffered by SEACOR was caused by Windstorm, Named Windstorm or Flood, as defined and understood under the Commonwealth" policy. SEACOR asserted that all of its losses resulted from a Named Windstorm.[2] In contrast, Commonwealth argued Hurricane Katrina was

---

[1]We will refer only to Hurricane Katrina, with the understanding that a ruling would apply to damages from each storm.

[2]SEACOR notes that none of its damage was caused by the breaking of the levees and
(continued...)

a "multi-peril occurrence" that required the use of deductibles and liability limits for both Flood and Named Windstorm.

The policy defined *Named Windstorm* as "any Windstorm . . . or any atmospheric disturbance which have [sic] been declared to be a tropical storm and/or hurricane by the National Weather Service or the National Hurricane Center." Notably, this definition included "atmospheric disturbances" declared to be hurricanes, regardless of whether those disturbances met the policy's definitional requirements of a Windstorm. For Windstorm, the policy's definition section stated: "Windstorm shall constitute a single claim hereunder provided, if more than one windstorm shall occur within any period of seventy-two (72) hours during the term of this Policy, such windstorm shall be deemed to be a single windstorm within the meaning thereof." Lastly, *Flood* was defined to mean "waves, tide or tidal water, inundation, rainfall and/or resultant runoff, and the rising (including overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, or similar bodies of water whether wind-driven or not." No separate provision in the policy denoted whether multiple deductibles could apply.

On opposing motions for partial summary judgment, the district court concluded that only the Named Windstorm deductible applied. Further, the court found the Flood liability limit did not apply because the Named Windstorm's percentage-based deductible structure already included the possibility of greater damages—and a correspondingly higher deductible—when

---

[2](...continued)
instead all water-related damages were attributable to hurricane rains and the storm surge. We need not decide whether the Named Windstorm deductible would include flooding damage caused by breaking levees.

No. 10-30020

compared to the Flood's flat-rate deductible.  Commonwealth timely appealed.

## B.

In August 2007, SEACOR amended its complaint to include penalties, fees, and costs pursuant to Louisiana Revised Statutes sections 22:1892 and 22:1973,[3] alleging Commonwealth acted in bad faith in its interpretation of the policy. Section 22:1892 provides that an insurer shall pay claims amounts within thirty days after receipt of satisfactory proofs of loss.  When the insurer fails to make this payment and is found to have acted arbitrarily, capriciously, or without probable cause, the insurer is subject to a penalty of fifty percent of damages or $1000, whichever is greater.[4]  Section 1973 is a similar statute, requiring that an insurer "owes to his insured a duty of good faith and fair dealing.  The insurer has an affirmative duty to adjust claims fairly and promptly . . . . Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach."   Failing to pay a claim within sixty days for arbitrary or capricious reasons or without probable cause constitutes a breach of good faith. The claimant may be awarded penalties not to exceed two times the damages

---

[3]These statutes were formerly LA. REV. STAT. ANN. § 22:658 and § 22:1220.

[4]The legislature amended this statute in August 2006 during the aftermath of Hurricane Katrina to increase the penalty from twenty-five percent to fifty percent, also adding reasonable attorney fees and costs.  Under Louisiana law, "[t]he amendment is unquestionably substantive, and as such cannot be applied retroactively." *Sher v. Lafayette Ins. Co.*, 07-2441 (La. 4/8/08), 988 So. 2d 186, 198 (holding that the version of the law that applied when the claim first arose is applicable).  Thus, Commonwealth would only be subject to a twenty-five percent penalty. *But see id.* at 208–09 (Knoll, J., concurring in part and dissenting in part) (finding that the insurer has a continuing obligation to act in good faith and thus the revised statute with higher penalties should apply to Katrina cases where the insurer's vexatious behavior continued to occur after the revision).

No. 10-30020

sustained or $5000, whichever is greater.[5]

Commonwealth paid SEACOR applying both the Flood and Named Windstorm deductibles, which resulted in lower payments. SEACOR contended that Commonwealth acted in bad faith by failing to timely pay claims for no reason other than a misinterpretation of its own policy. SEACOR noted that Commonwealth's position here was counter to its position in *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*[6] and argued these conflicting readings are clear evidence that Commonwealth here intentionally misinterpreted its policy. Commonwealth replied that its varying positions rested on differences between the SEACOR and Six Flags policies.

Commonwealth moved for summary judgment on the bad faith claim, which the district court initially denied. Commonwealth then filed a motion for reconsideration, which was granted, and the court found "no reasonable juror could return a verdict in favor of the policyholder on bad faith claims. As a matter of law, Seacor is not entitled to recover penalties or attorneys' fees . . . ." SEACOR appeals this judgment.

---

[5]The Louisiana Supreme Court has recognized that these two statutes are nearly identical, with the only difference being the amount of time the insurer has to pay the claim. *See Reed v. State Farm Mut. Automobile Ins. Co.*, 03-0107 (La. 10/21/03), 857 So. 2d 1012, 1020; *Calogero v. Safeway Ins. Co. of La.*, 99-1625 (La. 1/19/00), 753 So. 2d 170, 174. Further, the court has held that when Louisiana Revised Statutes § 22:1973 provides for a greater penalty, it supersedes § 22:1892 such that the plaintiff cannot recover penalties under both statutes. But the plaintiff may still recover attorney fees under either statute. *Calogero*, 753 So. 2d at 174.

[6]535 F. Supp. 2d 744 (E.D. La. 2008), *aff'd in part* and *rev'd in part*, 565 F.3d 948 (5th Cir. 2009).

No. 10-30020

II.

We review a district court's grant of summary judgment *de novo*.[7] A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9] In our review, we consider all evidence "in the light most favorable to the party resisting the motion."[10]

Sitting in this diversity case, we apply Louisiana law. "Under Louisiana law, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[11] In interpreting insurance contracts, courts seek to determine the parties' common intent, as reflected by the words in the policy.[12] The Civil Code provides that "words of a contract must be given their generally

---

[7]*See Gonzales v. Denning*, 394 F.3d 388, 391 (5th Cir. 2004).

[8]FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a). The amended rule contains no substantive change to the standard.

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10]*Trevino v. Celanese Corp.*, 701 F.2d 397, 407 (5th Cir. 1983).

[11]*In re Katrina Canal Breaches Lit.*, 495 F.3d 191, 206 (5th Cir. 2007) (internal quotation marks and alterations omitted).

[12]*See La. Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994).

7

No. 10-30020

prevailing meaning."[13]  When those words are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its four corners and no parol evidence is permitted.[14]

III.

Our first question is whether, in the absence of a specific provision allowing multiple deductibles, the policy requires SEACOR to pay both the Flood and Named Windstorm deductibles or whether the single Named Windstorm deductible encompasses Katrina's wind and water damage. As an initial matter, we turn to the policy's definition of Named Windstorm, which reads, "any Windstorm, as defined [by the policy], or any atmospheric disturbance which have [sic] been declared to be a tropical storm and/or hurricane by the National Weather Service or the National Hurricane Center."  While the Named Windstorm definition incorporates the Windstorm definition, the Windstorm definition itself is inadequate.  The policy never describes what events or conditions qualify as a Windstorm and merely states that multiple windstorms within a 72-hour period will be deemed as one windstorm.  Given this deficiency, we could turn to the Louisiana Supreme Court, which provides "in the absence of definition or limitation on the subject, a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either (a) by

---

[13]LA. CIV. CODE ANN. art. 2047.

[14]*See Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So. 2d 1024, 1031.

impact of its own force or (b) by projecting some object against the property."[15] Yet the policy's Named Windstorm definition does not rely on the Windstorm definition alone. Instead, a Named Windstorm also includes "any atmospheric disturbance" that the National Weather Service declares to be a hurricane or tropical storm. The National Weather Service declared Katrina and Rita to be hurricanes. Therefore, these events and the damage they caused fall within the Named Windstorm definition and require use of the Named Windstorm deductible.

Commonwealth asserts that water damages cannot be covered under the Named Windstorm deductible because the definition of Named Windstorm does not include flooding. We do not find this persuasive. Louisiana law requires that words in a contract be given their "generally prevailing meaning."[16] The *American Heritage Dictionary* defines "hurricane" as a "severe tropical cyclone . . . usually involving heavy rains."[17] Thus, applying ordinary definitions, losses caused by a Named Windstorm, which under the policy's definition includes hurricanes, could include losses caused by heavy rains.

Most insurance policies specifically exclude coverage for water-related events that often accompany windstorms.[18] SEACOR's policy does not contain such an exclusion but rather contains separate deductibles for the perils of

---

[15] *Roach-Strayhan-Holland Post No. 20, Amer. Legion Club, Inc. v. Continental Ins. Co.*, 112 So. 2d 680, 682 (La. 1959).

[16] LA. CIV. CODE ANN. art 2047.

[17] AM. HERITAGE DICTIONARY 628 (2d College ed. 1982); *see also Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So. 2d 577, 581–83 (noting that dictionaries are a source useful to determine the common and approved usage of words).

[18] COUCH ON INS. § 153:56 (3d ed. 2010).

No. 10-30020

Named Windstorm and Flood, without indicating when, if ever, multiple deductibles apply. The provision simply states that the Named Windstorm deductible applies to "loss caused directly by the peril of a Named Windstorm." Therefore, if the damage caused by rain and flood was "caused directly" by Katrina, then it may be covered under the Named Windstorm deductible.

Because the policy does not define "loss caused directly by," we rely on Louisiana law, which equates "direct loss" to "proximate or efficient cause."[19] With windstorms, the Louisiana Supreme Court has held that "it is sufficient, in order to recover upon a windstorm insurance policy not otherwise limited or defined, that the wind was the proximate or efficient cause of the loss or damage, notwithstanding other factors contributing thereto."[20]   Accordingly, state appellate courts have found that windstorm policies may cover damage from affiliated heavy rains, if the wind was the proximate cause of the damages.[21]  It follows here that Katrina's winds were the proximate cause of SEACOR's water-related damages.

Commonwealth further argues that Katrina included multiple "perils" so

---

[19] See Arias-Benn v. State Farm Fire & Cas. Ins. Co., 495 F.3d 228, 231 (5th Cir. 2007) ("Louisiana law equates 'direct loss' with proximate cause; an insurance policy, however, may limit or otherwise define 'direct loss.'").

[20] Roach-Strayhan-Holland, 112 So. 2d at 683; see also Lorio v. Aetna Ins. Co., 232 So. 2d 490, 493 (La. 1970) (holding that "if a windstorm is the dominant and efficient cause of the loss, the insured may recover notwithstanding that another cause or causes contributed to the damage suffered").

[21] See Leonards v. Travelers Ins. Co., 506 So. 2d 509, 511 (La. Ct. App. 1986) (holding that wind was not the sole cause of the damage but the damage was still covered by the windstorm policy).

No. 10-30020

multiple deductibles should apply,[22] an argument contradicted by the policy. Under the policy, "[e]ach occurrence resulting in a claim for loss shall be adjusted separately." An occurrence is defined as "any one loss, disaster or casualty or series of losses, disasters or casualties arising out of one event." Thus, each series of losses, even those stemming from different perils, arising from one event is adjusted separately. SEACOR may have experienced different casualties from Katrina's two perils, wind and rain, but under the policy, those losses arose out of one event—Katrina—and warrant only one deductible.

Our court previously reached a similar conclusion in a different insurance setting.[23] There, a brokerage firm sought recovery under an insurance provision that covered employee dishonesty. The employee broker went on a four-day speculative spree in soybean futures, issued two bad checks, became insolvent, and owed the brokerage firm over $150,000. The insurance company argued that the $35,000 deductible should apply to each step in the trading spree that could be characterized as "dishonest." We upheld the district court and applied a single deductible. There, the insurance policy in question covered "any one act or omission of any person" or "acts or omissions." We held that multiple "acts" by the same person could be deemed a single "casualty" or "event."[24]   All

---

[22]A "peril" may be defined as "[t]he cause of a risk of loss to person or property; esp., the cause of a risk such as fire, accident, theft, forgery, earthquake, flood, or illness." BLACK'S LAW DICTIONARY 1253 (9th ed. 2009).

[23]*Howard, Weil, Labouisse, Friedrichs, Inc. v. Ins. Co. of N. Am.*, 557 F.2d 1055 (5th Cir. 2003) (applying Louisiana law); *cf. Saint Paul-Mercury Indem. Co. v. Rutland*, 225 F.2d 689 (5th Cir. 1955) (applying a single liability limit for one accident when a trucker derailed a freight train causing damage to sixteen cars, contents of cars and shippers, and to the roadbed).

[24]*Howard, Weil*, 557 F.2d at 1059–60.

11

No. 10-30020

damages were caused by the same speculative spree by the same employee so only one deductible applied. Likewise, here, under the terms of SEACOR's policy, Katrina was a single event, requiring only the Named Windstorm deductible, even if the storm included multiple "acts" of rain and wind.

IV.

Notwithstanding the single deductible for Named Windstorm, Commonwealth maintains that the Flood Limit of Liability should apply. Under the policy, Flood means "waves, tide or tidal water, inundation, rainfall . . . the rising (including overflowing or breakage of boundaries) of lakes . . . or similar bodies of water whether wind-driven or not." In *Six Flags*, we held that when a policy's flood definition did not exclude damage caused by other perils, then the flood limit of liability could apply, regardless of whether a hurricane caused the flood.[25] There, the flood limit applied on a "per occurrence" basis. We highlighted that the limit did not apply "per Flood Occurrence" or "as respects the peril of Flood."[26] In contrast, here, the Limit of Liability expressly applies only to "[l]oss caused by the peril of Flood." Since we have concluded under the deductible provision that all of SEACOR's damages were proximately caused by the Named Windstorm, then those damages cannot trigger the Flood liability limit because such losses were not caused by the peril of Flood.

Commonwealth urges that the liability limits provision operates independently of the deductible provision. As the argument goes, the applicability of the Named Windstorm deductible does not affect the applicability

_____

[25]*Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 955 (5th Cir. 2009).

[26]*Id.* at 956–57.

12

of the Flood liability limit. This argument strains to escape Louisiana law that requires "construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions."[27] It fails. The definitions of the perils apply to both the Deductible and the Limit of Liability provisions. Since the Named Windstorm definition encompasses all of SEACOR's damages, then only a liability limit for a Named Windstorm would apply. Further, the Deductible provision explicitly operates in conjunction with the liability limits. The introductory paragraph of the Deductible provision states that each loss is covered "up to the applicable Limit of Liability." Three perils have defined liability limits: Flood, Earthquake, and Earthquakes in California. But the Limit of Liability provision also provides for a cumulative general limit of $10 million. The proper assumption for the perils that have deductibles but no defined liability limit, including Windstorm and Named Windstorm, is that only the cumulative liability limit applies to those perils.

Commonwealth contends that the inclusion of "whether wind-driven or not" in Flood's definition would be meaningless if the Flood Limit of Liability did not apply when windstorms caused flooding. Yet in *Six Flags*, we held that a reasonable interpretation of similar language "is that water driven by wind is Flood—giving meaning to that provision; however, if that wind-driven Flood is caused by another covered peril, such as a Named Storm, then the Flood sublimit does not apply."[28] We find the same conclusion apt here.

Commonwealth further argues that since SEACOR collected proceeds

---

[27] *La. Ins. Guar. Ass'n*, 630 So. 2d at 763 (citing LA. CIV. CODE ANN. art. 2050 (1987) ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.")).

[28] *Six Flags*, 565 F.3d at 960–61.

No. 10-30020

under its National Flood Insurance Program policies, then SEACOR itself admits that it sustained damages from flooding and the corresponding limit of liability should apply. This argument fails because whether SEACOR collected under other policies has no implication for how *this* policy should be interpreted. The Commonwealth policy could have provided a liability limit for Named Windstorm damage. It did not. There is nothing to indicate that the limit for the peril of Flood should apply when, under the policy, all damages were under the umbrella of a Named Windstorm. The policy language contradicts such a conclusion, stating the limit applies only to losses caused by Flood.

V.

Finally, we turn to SEACOR's challenge to the summary judgment in favor of Commonwealth on the bad faith claims. Louisiana statutes provide that when an insurer fails to pay a claim within thirty or sixty days and when such failure is found to be "arbitrary, capricious, or without probable cause," the insurer is subject to penalties.[29] SEACOR relies predominantly on language from a 2008 Louisiana Supreme Court decision, *Louisiana Bag Co., Inc. v. Audubon Indemnity Co.*, which stated "when there is a dispute over the extent of coverage afforded by an insurance policy, the insurer bears the risk of misinterpreting its own policy and will be liable for penalties for its errors."[30] The only reason Commonwealth did not make full payments was because of the dispute over the deductible and liability limit. Thus, SEACOR contends, this involved a dispute

---

[29]LA. REV. STAT. ANN. § 22:1892; 22:1973.

[30]*Louisiana Bag Co., Inc. v. Audubon Indemnity Co.*, 08-0453 (La. 12/2/08), 999 So. 2d 1104, 1117.

No. 10-30020

in the extent of coverage; Commonwealth proceeded at its own risk and is subject to penalties.

First, we note that the dispute here was not whether the policy covered SEACOR's damages but rather which deductibles and liability limits applied. As such, *Louisiana Bag*'s instruction to apply penalties in coverage disputes does not apply. Moreover, of course, Louisiana does not follow *stare decisis*. "Judicial decisions . . . are not intended to be an authoritative source of law in Louisiana."[31] A long line of cases with "uniform and homogeneous rulings" may be persuasive authority under the *jurisprudence constante* doctrine, but a single case does not produce a sufficient foundation for other cases to follow.[32]

The Louisiana Supreme Court's guidance on insurer penalties has been less than uniform. *Louisiana Bag* itself also held that "when there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause."[33] Another 2008 decision found that the bad faith statutes "are penal in nature and must be strictly construed. . . . The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay."[34] That same court held

---

[31] *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So. 2d 119, 128.

[32] *Id.* at 128-29.

[33] *Louisiana Bag*, 999 So. 2d at 1114.

[34] *Sher*, 988 So. 2d at 206 (quoting *Reed v. State Farm Mut. Auto Ins. Co.*, 03-0107 (La. 10/21/03), 857 So. 2d 1012, 1020–21). The *Sher* court affirmed penalties because the insurer had misrepresented factual findings to the plaintiff and had failed to pay undisputed damages.

No. 10-30020

that "statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense."[35] We find here, as we have concluded before, "it is not apparent from the statute that the Louisiana legislature intended insurers to pay penalties whenever they err in their interpretation of coverage."[36]

SEACOR does not come with any evidence that Commonwealth acted arbitrarily or capriciously beyond Commonwealth's inconsistent reading of similar provisions in the SEACOR and Six Flags policies, and this is insufficient. The Six Flags policy more clearly delineated the use of one deductible in the event of a multi-peril occurrence, such as Hurricane Katrina. We are not persuaded that Commonwealth acted arbitrarily or without a good-faith defense. It promptly paid SEACOR over $4 million to cover undisputed damages and looked to judicial assistance to resolve disputes that bore on its treatment of the policy deductible and liability limits.[37] Following the language of the statute, we do not find penalties appropriate here.

## VI.

We affirm the district court's grant of summary judgment in favor of

---

[35]*Id.*; *see also Calogero*, 753 So. 2d at 173 ("[W]here the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties.").

[36]*Woods v. Dravo Basic Materials Co.*, 887 F.2d 618, 623 (5th Cir. 1989).

[37]Commonwealth's payment contrasts with other cases where the Louisiana Supreme Court has enforced penalties. In *Louisiana Bag*, for example, the insurer delayed multiple payments and claimed it was uncertain of the extent of coverage, even though it had received an opinion from its legal counsel that the damages were covered. 999 So. 2d at 1117. Likewise, in *Sher*, the insurer failed to pay even the undisputed claims. 988 So. 2d at 207.

No. 10-30020

SEACOR, agreeing with its policy interpretation—the Named Windstorm deductible encompassed both wind and water damage caused by Hurricanes Katrina and Rita—and with its holding that the Flood liability limit did not apply. Further, we affirm the district court's grant of summary judgment rejecting SEACOR's claims of bad faith in favor of Commonwealth.