# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 26, 2020

Lyle W. Cayce
Clerk

No. 19-20363

PAN AM EQUITIES, INCORPORATED,

      Plaintiff–Appellant,

v.

LEXINGTON INSURANCE COMPANY,

      Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, STEWART, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

Hurricane Harvey was the second-costliest natural disaster in U.S. history, ranking just behind Hurricane Katrina.[1] Harvey claimed 68 lives and inflicted $125 billion in damage, mostly from catastrophic flooding as the slow-moving storm, the wettest on record, stalled over southeast Texas, dumping up to 60″ of rain over four days.[2] "So much rain has fallen," tweeted the National

---

[1] ERIC S. BLAKE & DAVID A. ZELINSKY, NATIONAL HURRICANE CENTER TROPICAL CYCLONE REPORT: HURRICANE HARVEY 1 (2018) (available at: https://www.nhc.noaa.gov/data/tcr/AL092017_Harvey.pdf).

[2] *Id.* at 2–7.

No. 19-20363

Weather Service, "we've had to update the color charts on our graphics in order to effectively map it."[3]

A litigation deluge naturally followed. This insurance-coverage case—a debate over deductibles—concerns Harvey-induced flood damage to two office buildings owned by Pan Am Equities and insured by Lexington Insurance. Unsurprisingly, the litigants are hardwired for certitude (as litigants tend to be), each adamant that the policy language "unambiguously" cuts their way. There are two competing deductibles: (1) the generic "Flood" deductible (favored by Pan Am), which covers "any . . . loss due to Flood"; and (2) the pricier "Windstorm" deductible (favored by Lexington), which covers "Flood" damage "arising out of a Named Storm." Important here, the Policy also has an Anti-Stacking clause that says if multiple deductibles apply, then the largest one trumps.

The district court sided with Lexington that the unequivocal language of the "Windstorm" deductible controls, meaning zero recovery for Pan Am. We agree—the applicable deductible is not debatable—and affirm.

I

Two of Pan Am's Houston buildings were damaged *solely* by flooding from Hurricane Harvey.[4] Pan Am filed a claim with Lexington. Lexington agreed the claim was covered but instead of applying the Flood deductible it applied the Policy's "Windstorm and Hail" deductible, relying on the subsidiary

---

[3] National Weather Service (@NWS), TWITTER (Aug. 28, 2017, 9:21 AM), https://twitter.com/NWS/status/902174274571689984?s=20.

[4] Notably, the damage arose *only* from flooding, not from wind or other hurricane-related perils.

"Named Storm" provision.[5] And under the "Windstorm" TIV-based deductible, Pan Am's recovery was sharply less: $0.00.

Here are the two deductibles:

- For "Flood" losses, $100,000 "shall be deducted from any adjusted loss due to Flood";[6] and "Flood" is contractually defined as:

  "surface water; rising waters; waves; tide or tidal water [etc.] . . . regardless of any other cause or event contributing concurrently or in any other sequence of loss."[7]

- For "Windstorm" losses, $100,000 "shall be deducted from any adjusted loss due Windstorm" . . . "except as follows:"

  "5% of the total insurable values (TIV) at the time of loss at each location involved in the loss or damage arising out of a Named Storm . . . in Tier 1 Counties . . . regardless of the number of coverages, locations or perils involved (including but not limited to all Flood . . . .)"

Translation: The deductible is *much* higher for losses caused by a Named Storm such as Hurricane Harvey. And again, if two or more deductibles apply to a single loss, the Policy's Anti-Stacking clause specifies that "the largest deductible applicable" will govern.

Lexington and Pan Am both moved for summary judgment, each arguing that the Policy unequivocally favored them. Applying Texas law, the district court agreed with Lexington that the "Windstorm" deductible, informed by the "Named Storm" provision's explicit terms, covered "Flood" damage caused by a

---

[5] "Windstorm" is undefined in the Policy. And, as "Hail" is irrelevant in this case, we refer to the "Windstorm and Hail" deductible as the "Windstorm" deductible.

[6] For certain flood-prone properties, the deductible jumps to $1 million; but that deductible is irrelevant here.

[7] We sometimes refer to the "regardless of" clause in "Flood['s]" definition as an anti-concurrent causation clause.

No. 19-20363

hurricane.[8] And since the larger TIV-based "Windstorm" deductible applied and Pan Am's claimed loss was less than 5% of the "total insurable values," Pan Am was owed nothing under the Policy.

## II

The federal summary-judgment standard is familiar: "We review grants of summary judgment de novo, using the same standard as that employed initially by the district court under Rule 56."[9] Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]

Texas contract-interpretation standards are also familiar.[11] The rules in the Lone Star State for interpreting insurance policies have been around a *long* time.[12] The paramount rule is that courts enforce unambiguous policies as written.[13] We must honor plain language, reviewing policies as drafted, not revising them as desired. If an insurance contract, just like any other contract, uses unambiguous language, that's that. Our first task, then, is purely legal:

---

[8] Because it found the Policy unambiguous, the district court refused to consider Pan Am's extrinsic evidence or allow discovery to develop additional extrinsic evidence.

[9] *Petzold v. Rostollan*, 946 F.3d 242, 247–48 (5th Cir. 2019) (quotations omitted).

[10] FED R. CIV. P. 56(a).

[11] The district court applied Texas law, and Pan Am does not complain about this. Rather, both parties assume that New York and Texas contract law yield the same outcome. "Given that concession, we adopt the same approach as the [district] court and assume without deciding that [Texas] law applies." *Matter of Pioneer Health Servs., Inc.*, 739 F. App'x 240, 243 n.1 (5th Cir. 2018); *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) (finding any choice-of-law argument "waived" when the appellant didn't present it to the district court).

[12] *Merchants' Mut. Ins. Co. v. Lacroix*, 35 Tex. 249, 256 (Tex. 1871) (enforcing "language of an unambiguous import" in the insurance policy).

[13] *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (5th Cir. 2015).

deciding whether the Policy is ambiguous.[14] And under Texas contract law, "ambiguity" means more than "lack of clarity."[15] A policy is not ambiguous merely because different parties—or different judges—offer conflicting interpretations.[16] If its wording "can be given a definite . . . meaning, then it is not ambiguous . . . ."[17] A policy is only ambiguous if, giving effect to all provisions, its language is "subject to two or more reasonable interpretations."[18] Also, ambiguity must be evident from the policy itself; it cannot be fashioned via parol evidence.[19] Finally, because we presume that contracting parties intended all that they enacted, we examine the entire contract in order "to harmonize and give effect to all provisions so that none will be meaningless."[20]

## III

The dispute is simply stated: Which deductible applies to flood damage caused by a hurricane, the $100,000 "Flood" deductible or the steeper TIV-

---

[14] *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157 (describing this inquiry as a quintessential "question of law").

[15] *Universal C.I.T. Credit Corp. v. Daniel,* 243 S.W.2d 154, 157 (Tex. 1951).

[16] *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998); *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157.

[17] *Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co. of Pitts.*, 833 F.3d 470, 474 (5th Cir. 2016) (quotation marks omitted).

[18] *Id.* at 464–65; *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (giving unambiguous terms "their ordinary and generally accepted meaning").

[19] *Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520–21 (Tex. 1995) ("Parol evidence is not admissible for the purpose of creating an ambiguity.").

[20] *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

based "Windstorm" deductible?[21] The answer turns on the interplay of five provisions:

1. § A(10)(C)—"Flood" deductible;

2. § A(10)(D)—"Windstorm" deductible;

3. § A(10)(D)(1)—"Named Storm" provision;

4. § B(3)(L)(b)—"Flood" definition; and

5. § A(10)(b)—Anti-Stacking clause.

Pan Am insists the "Windstorm" deductible and its "Named Storm" provision are inapt. Since that provision is found under the "Windstorm" heading, it thus applies only to those losses caused at least in part by "Windstorm"—not to "Flood"-only losses. Lexington counters that a hurricane is a "Windstorm," and the "Named Storm" provision applies by its terms to "Flood" losses that are caused by a "Named Storm."

We side with Lexington. The "Windstorm" deductible applies to all "loss due to Windstorm." And the accompanying "Named Storm" provision enlarges what qualifies as a "loss due to Windstorm" to plainly encompass Harvey's flood damage to Pan Am's buildings. Holding otherwise would not "give effect to all [Policy] provisions."[22] Our on-point decision in *SEACOR Holdings, Inc. v. Commonwealth Insurance Co.* is instructive.[23] In that case, involving wind

---

[21] The material facts are undisputed. Everyone agrees that: (1) only a "Flood" caused Pan Am's loss; (2) a "Named Storm" (Hurricane Harvey) caused the "Flood"; (3) the damaged buildings were covered by the Policy and in "Tier 1 Counties"; and (4) both structures have TIVs so large that Pan Am's claim amount falls within the TIV-calculated deductible. So, the dispute is limited to whether the "Named Storm" provision applies to non-wind, "Flood"-only hurricane damage.

[22] *Gilbert Tex. Const., L.P.*, 327 S.W.3d at 126.

[23] 635 F.3d 675 (5th Cir. 2011) (applying near-identical Louisiana contract-interpretation law). The *SEACOR* policy is similar to the Policy here. It had multiple peril-based deductibles, including "Windstorm," "Named Windstorm," and "Flood." *Id.* at 678.

and water damage inflicted by Hurricanes Katrina and Rita, the threshold dispute was whether SEACOR had to pay two deductibles: one for Flood and another for Named Windstorm. The policy contained no specific provision allowing multiple deductibles. We concluded that the Named Windstorm deductible applied since "Katrina's winds were the proximate cause of SEACOR's water-related damages."[24]

Here, the answer is even more inescapable. First, and most telling, this Policy's "loss due to Windstorm" is informed by a "Named Storm" provision that *specifically includes "Flood" damage*. In *SEACOR*, the Named Windstorm provision merely spoke to "loss caused directly by the peril of a Named Windstorm." There was no specific mention of flood damage. Even so, we concluded that the flood damage was "caused directly" by Katrina and thus covered under the Named Windstorm deductible. Second, even if *both* deductibles applied here—the TIV-based "Windstorm" deductible *and* the generic $100,000 "Flood" deductible—the former deductible controls. Indeed, the Policy expressly anticipates that multiple deductibles will sometimes apply to a single occurrence. And when this happens, the Anti-Stacking provision imposes the "largest deductible applicable"—here, the 5% TIV-based "Windstorm" deductible, which means no recovery for Pan Am.[25]

Pan Am repeats that the Policy provides discrete deductibles for discrete types of losses and, when, as here, "Flood" loss is unaccompanied by "Windstorm" loss, we should apply only the "Flood" deductible. In other words, no wind damage = no "Windstorm" deductible. For support, Pan Am points to the "lead-in language" for each deductible: "[t]he following sum(s) shall be

---

[24] *Id.* at 682.

[25] *Kelley-Coppedge, Inc.*, 980 S.W.2d at 467 (accepting the contractual reading that "give[s] meaning" to all relevant provisions and is "consistent with the plain, ordinary, and generally accepted meaning" of the relevant terms).

deducted from any adjusted loss due to" "Flood" or "Windstorm." Pan Am takes this to mean that for a specific peril's deductible to apply, that peril must have contributed to the loss. In other words, there must have been wind damage for the "Windstorm" deductible to apply. And, since the "Named Storm" provision is found under the "Windstorm" deductible, it may only apply when the "Windstorm" deductible itself applies. Under Pan Am's reading, no wind damage means the "Windstorm" deductible can't apply, meaning the "Named Storm" provision can't apply. Pan Am bolsters its interpretation by pointing to the anti-concurrent causation clause in "Flood['s]" definition—the Flood deductible applies to Flood damage regardless of any contributing cause.

We understand Pan Am's argument. But we cannot accept it. Pan Am places undue interpretive weight on the fact that the Policy's "Named Storm" provision is found within the "Windstorm" deductible. When we interpret a contract, insurance or otherwise, location (where the provision is) matters far less than locution (what the provision says).[26] This Policy's "Named Storm" provision sweeps in a slew of associated perils explicitly untethered from wind, specifically "Flood." By defining what a "loss due to Windstorm" means, the provision makes clear when the "Windstorm" deductible applies. Put differently, the express inclusion of "Flood" damage within the "Named Storm" provision compels us to read "loss due to Windstorm" broadly to include all loss or damage—"including . . . Flood"—"arising out of a Named Storm."

---

[26] *See, e.g.*, *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) ("[W]e examine the entire document and *consider each part with every other part* so that the effect and meaning of one part on any other part may be determined." (emphasis added)).

Texas law commands that we honor the Policy's plain language—every word on every page—"giv[ing] effect to all . . . [the Policy's] provisions."[27] To read this Policy such that "Flood" losses caused by a "Named Storm" *exclusively* fall under the "Flood" deductible would render the "Named Storm" provision, which explicitly incorporates "Flood" damage," a nullity.[28] We must reject Pan Am's myopic view that the Policy's generic definition of "Flood"—"rising waters . . . regardless of any other cause or event contributing concurrently"— precludes the more specific "Named Storm" provision from listing the perils covered by the "Windstorm" deductible.[29]

Pan Am's binary-choice framing also flouts the Policy's Anti-Stacking clause, which specifically contemplates, and resolves, the specter of multiple deductibles. The decision tree is straightforward: If the "Flood" deductible and the "Windstorm" deductible concurrently apply, then the Anti-Stacking clause

---

[27] *Kelley-Coppedge, Inc.,* 980 S.W.2d at 464; *see also RSUI Indem. Co.*, 466 S.W.3d at 118 ("We strive to give effect to all of the words and provisions so that none is rendered meaningless." (citation omitted)).

[28] *See, e.g.*, *Tesoro Ref. & Mktg. Co., L.L.C.*, 833 F.3d at 474 ("We must construe [a] policy such that no provision is rendered meaningless."); *Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 157 ("When construing [a] policy's language, we must give effect to all contractual provisions so that none will be rendered meaningless.").

[29] Building on this theme, Pan Am also argues the "Named Storm provision does not (and cannot) expand the meaning of 'Windstorm' to encompass Flood [because of Flood's definition]." But the "Flood" definition's anti-concurrent causation clause plainly means that, regardless of any alternative or concurrent causes of the contractual "Flood," it will still be a contractual "Flood." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 430–31 (5th Cir. 2007) (holding that a similar anti-concurrent causation clause rendered the applicable provision effective even when another peril contributes to the damage). But this doesn't mean that a contractual "Flood" cannot also be a contractual "Flood" that was *caused by* a "Named Storm." There is no causation issue here; nobody disputes that Pan Am's damage resulted from a "Flood" that arose from Harvey. Put differently, the "Flood" deductible may apply to Pan Am's loss due to "rising waters" even though the "rising waters" were caused by a hurricane. This is the effect of the generic "Flood" definition. But since these "rising waters" arose not from just any run-of-the-mill storm but from a "*Named* Storm," the "Named Storm" provision *inarguably* applies, thus triggering the Anti-Stacking clause and the "Windstorm" TIV-based deductible.

mandates the more expensive deductible: "5% of the total insurable values." Again, Pan Am's reading fails to give effect to the entire Policy as Texas contract law requires.

Our conclusion today aligns with our previous interpretations of similar policy language. In *Six Flags, Inc. v. Westchester Surplus Lines Insurance Co.*, we held that both the "Flood" and "Named Storm" deductibles applied to Katrina-induced flood damage.[30] Later, in *SEACOR*, we held that the "Named Windstorm deductible encompasses Katrina's wind *and* water damage" and thus "require use of the Named Windstorm deductible."[31]

The same reasoning applies here, and with added gusto as the Windstorm deductible here is informed by a "Named Storm" provision that expressly encompasses the "Flood" peril. Any Harvey-caused flooding falls plainly within the "Named Storm" provision and, therefore, within "loss due to Windstorm." True, the "Named Storm" provisions in *Six Flags* and *SEACOR* were not found "under" another deductible.[32] No matter. What *does* matter is what the Policy says. It must be read as a cohesive, harmonious whole—and here, the "Named Storm" provision, by specifically including the "Flood" peril, clearly expands the lead-in "loss due to Windstorm" language.[33] Because Pan

---

[30] 565 F.3d 948, 951, 955 (5th Cir. 2009).

[31] 635 F.3d 675, 681 (5th Cir. 2011) (emphasis added).

[32] Pan Am argues that, if the parties had intended the "Named Storm" provision to apply to Flood-only losses, the Policy would have had a separate "Named Storm" provision. But just because a policy may be worded *more* unambiguously doesn't render the existing policy ambiguous. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex. 2006) ("[A]lternative . . . constructions do not make a policy ambiguous.").

[33] *Kelley-Coppedge, Inc.,* 980 S.W.2d at 464; *Seacor*, 635 F.3d at 681**.** Additionally, in *Tuepker v. State Farm Fire & Casualty Co.*, we held that a "Hurricane Deductible" didn't include "perils relating to flooding" *only because* "water damage [was] explicitly excluded." 507 F.3d 346, 352–56 (5th Cir. 2007).

No. 19-20363

Am's flood damage was caused by Hurricane Harvey, the 5% TIV-based "Windstorm" deductible applies—period.

This Policy, like many insurance policies, may not rank as first-rate legal craftsmanship. But it is clear enough. Inartful is not the same as equivocal. When read as an interrelated, contextual whole, this Policy is unambiguous, particularly in light of our precedent interpreting similar language. There is but one reasonable meaning: Damage caused by an ordinary "Flood" (not by flooding associated with a storm declared by the National Weather Service) carries a $100,000 deductible. But "Flood" damage caused by a "Named Storm," whether or not that damage was caused by wind, has a much higher TIV-based Windstorm deductible. This reading gives full effect to the "Named Storm" provision's "regardless of" language by encompassing all perils involved in a "Named Storm," "including . . . Flood."

As this Policy yields one unambiguous interpretation, the district court's grant of summary judgment is affirmed.[34]

IV

This language and logic of this Policy are clear. The "Windstorm" deductible covers this Harvey-caused Flood loss. And even if the generic $100,000 "Flood" deductible were to also apply, the 5% TIV-based deductible would prevail under the Policy's Anti-Stacking clause. As Pan Am's claim does not exceed the TIV deductible, we thus AFFIRM the district court's grant of summary judgment in favor of Lexington.

---

[34] As the Policy is unambiguous, the district court did not err in refusing to consider, or allow additional discovery for, extrinsic evidence that contradicts the Policy's explicit language. *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017) ("Extrinsic evidence cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated." (internal quotations omitted)).

11