# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 3, 2022

Lyle W. Cayce
Clerk

No. 20-20389

Landmark American Insurance Company,

*Plaintiff—Appellant*,

*versus*

SCD Memorial Place II, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-00838

Before Elrod, Willett, and Engelhardt, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

This case is about whether an insurance policy covered flood-related damage sustained by a building during Hurricane Harvey. The district court determined that the policy provided coverage and granted summary judgment in favor of the insured. Because we conclude that the text of the insurance policy does not support this result, we REVERSE and RENDER judgment in favor of the insurer.

No. 20-20389

I.

In 2016, Landmark American Insurance Company ("Landmark") issued an insurance policy to SCD Memorial Place II, L.L.C. ("SCD") that covered several SCD properties and was effective from August 31, 2016 to September 7, 2017.

The Landmark policy was a "deductible buy back policy," a type of insurance policy that an insured may choose to purchase when the insured's primary insurance policy has a high deductible. If the insured makes a claim on the primary insurance policy, the deductible buy back policy may cover all or a portion of the deductible required by the primary policy, reducing the insured's out-of-pocket costs.

In this case, SCD's primary insurance policy was a policy issued by the Lexington Insurance Company. The Lexington policy was a "all risks" policy that covered "all risks of direct physical loss or damage including flood, earth movement, and equipment breakdown." The Lexington policy had a high deductible and thus, the insured purchased the separate Landmark policy to help cover the cost of that deductible.

The "Insuring Clause" of the Landmark policy outlines the type of damage for which it would cover the deductible of the primary insurance policy. Specifically, Landmark agreed to indemnify the insured for damage "caused by any of such perils as are set forth in item 3 of the schedule, and which are also covered by . . . the 'Primary Insurer(s).'"

Item 3, in turn, states: "Perils Covered: Windstorm or Hail associated with a Named Storm." Beneath this, it states that it is "[e]xcluding Terrorism." Finally, it specifies that "Named Storm" is "[f]ollowing Named Storm definition in Lexington Insurance Company's policy." The "Named Storm" definition from the Lexington policy that is expressly incorporated into Item 3 is "a storm that has been declared by the

No. 20-20389

National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm or Tropical Depression."

In August 2017, Hurricane Harvey made landfall. The parties agree that Hurricane Harvey was a "Named Storm," as defined under the Lexington and Landmark policies and also that it caused tremendous damage to one of SCD's insured properties.

The damage occurred when Buffalo Bayou overflowed its banks and water flowed onto SCD's property.[1] An independent adjuster retained by Lexington confirmed to the in-house claims handler at Landmark that there was no reported wind damage to the property. Likewise, there is no evidence that the property suffered damage from hail.

SCD submitted a claim under the Lexington policy, which paid out millions of dollars for physical loss or damage in excess of the "Windstorm deductible" in that policy. SCD also submitted a claim to Landmark to cover its deductible under the Lexington policy.

Shortly after receiving a letter from SCD stating a claim for the deductible, Landmark filed this lawsuit against SCD, seeking a declaration that the policy it issued to SCD did not apply to the loss sustained.

The parties filed cross-motions for summary judgment. The motions were referred to a magistrate judge, whose memorandum and recommendation recommended granting SCD's motion for summary

---

[1] SCD contends that the water damage to the property was due not to natural overflow but rather to the decision of the Army Corps of Engineers to purposefully release water from the Addicks and Barker reservoirs into the bayou to prevent those reservoirs from overflowing. But SCD does not suggest that the true cause was wind- or hail-related; as such, whether the water damage is due to a "flood" or a "controlled release" is not material to the issues on appeal.

judgment and denying Landmark's.   The district court adopted the memorandum and recommendation in full.  Landmark timely appealed.

## II.

We review a grant of summary judgment "*de novo*, applying the same standard on appeal that is applied by the district court." *See Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 244 (5th Cir. 2006)).  Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Because Texas law governs this claim, we employ the principles of Texas contract construction" in interpreting the policy here.  *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010).  Under Texas law, "insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Id.*  We interpret insurance policies to "effectuate the intent of the parties at the time the contracts were formed." *Amerisure Ins. Co. v. Navigators Ins. Co.,* 611 F.3d 299, 309 (5th Cir. 2010) (quoting *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009)).

If an insurance policy "is worded so that it can be given only one reasonable construction, it will be enforced as written." *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).  When an insurance contract is ambiguous—meaning that it is susceptible to more than one reasonable interpretation—we adopt the interpretation that affords coverage. *See Amerisure Ins. Co.*, 611 F.3d at 309. But a policy is not ambiguous "merely because different parties—or

judges—offer conflicting interpretations." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). If the policy's wording "can be given a definite or certain legal meaning, [then] it is not ambiguous." *Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 833 F.3d 470, 474 (5th Cir. 2016) (alterations in original) (quoting *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). Furthermore, ambiguity "cannot be fashioned via parol evidence." *Pan Am Equities*, 959 F.3d at 674.

## III.

Both parties agree that the Landmark policy is unambiguous. Namely, they contend that the phrase "Perils Covered: Windstorm or Hail associated with a Named Storm" has only one reasonable interpretation. Naturally, both parties contend that the only reasonable interpretation cuts their way.

Landmark argues that the policy covers the specified perils of "Windstorm or Hail" that are "associated with a Named Storm [here, Hurricane Harvey]" but not *all* perils associated with a Named Storm. In other words, it is a "named perils" rather than "all risks" policy—it covers only the perils specified in the policy and does not need to use additional exclusionary language.

SCD cites *Pan Am Equities, Inc. v. Lexington Insurance Company* for the proposition that, under Fifth Circuit law, Hurricane Harvey was a "Windstorm" and therefore the policy covers all perils associated it. 959 F.3d at 677. Under SCD's interpretation, Landmark is on the hook to cover all damage from "[f]lood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain"[2] that are associated with Named Storms; the only time

---

[2] SCD imports this understanding from its primary insurance policy (the Lexington policy's) "Windstorm" deductible. Because the Windstorm deductible from the

the policy would not apply to a hurricane would be if it did not rise to the level of becoming a Named Storm.

We agree with Landmark because its interpretation aligns with the plain meaning of the text of the policy.[3]  Landmark's interpretation, unlike SCD's, makes sense of the framing phrase "Perils Covered."  This framing sets up "Windstorm" and "Hail" as specific perils that may be associated with a number of weather events rather than as weather events that may encompass any number of perils.  If SCD's interpretation of the policy were correct, then the Landmark policy simply could have stated that *all* damage from a Named Storm is covered (regardless of the peril that caused the damage).  But the Landmark policy does not state this.  Instead, the policy frames its coverage as applying to specific "[c]overed perils."

Furthermore, the listing of "Windstorm" and "Hail" separately supports Landmark's interpretation that the policy covers specific perils but not others.  If "Windstorm" includes all that SCD says it does (again, "[f]lood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain"), there would be no need to list "Hail" separately.  Texas law requires that we "give effect to all contract provisions so that none will be rendered meaningless." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).  Landmark's interpretation is the only one that accomplishes this.

---

Lexington policy includes perils such as "[f]lood, wind, wind gusts, storm surges, tornados, cyclones, hail or rain," SCD argues that the Landmark policy "expressly covers the perils of flood and rain associated with Windstorms."

[3] We do not consider the affidavit from one of Landmark's underwriters attesting that there was no intent to cover flood damage.  The policy is unambiguous, and an extrinsic affidavit need not be considered.

We do not accept SCD's argument that Landmark needed to expressly exclude flood-related damage from its policy in order not to cover it. By its text, the policy is a "named perils" policy. The Insuring Clause covers only those perils "set forth in item 3," and Item 3 states "Perils Covered: Windstorm or Hail associated with a Named Storm." This policy defines carefully which perils it covers; all others can be understood to be excluded. As such, it insures "against all the risks named in the perils clause (and, by implication, risks not named [are] not covered)." *Ingersoll-Rand Fin. Corp. v. Emp'rs Ins. Of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985).[4]

Furthermore, contrary to SCD's contention, *Pan Am Equities* does not stand for the proposition that, as a matter of law, the peril of "Windstorm" includes the peril of flood. Instead, *Pan Am Equities* further supports Landmark's interpretation.

*Pan Am Equities* also dealt with an insurance dispute following Hurricane Harvey. In that case, the dispute concerned which deductible the insured needed to pay. 959 F.3d at 672. There were two competing deductibles: a generic "flood" deductible favored by the insured and a steeper "Windstorm" deductible favored by the insurer. *Id.* A clause in the policy specified that when multiple deductibles applied, the largest one would trump. *Id.*

The "Windstorm" deductible in the *Pan Am Equities* policy applied to all "loss due to Windstorm." *Id.* at 675. The Windstorm deductible included a sub-provision that expressly included "the loss or damage arising

---

[4] The other exclusions in the Landmark policy that SCD points to (*i.e.*, those relating to Terrorism, electronic data, and fungus) do not transform the Landmark policy into an "all risks" policy subject to only those exclusions. Rather, those exclusions refine what types of damage Landmark will cover *when that* damage is caused by covered perils. They do not implicitly expand the number of covered perils.

out of a Named Storm." *Id.* at 673.  The so-called "Named Storm provision" in that policy was thus very different from the term "Named Storm" as it is used in this case.  In *Pan Am Equities*, the Named Storm provision *enlarged* what qualified as a loss under the "Windstorm deductible," *id.* at 675, whereas here the term "Named Storm" is the overarching occurrence, and the policy expressly describes which perils associated with that occurrence are covered.

Furthermore, *Pan Am Equities* differentiated between the perils of windstorm and flood, and included flood damage within the "Windstorm deductible" only because the "[p]olicy's 'Named Storm' provision sweeps in a slew of associated perils *explicitly untethered from wind, specifically 'Flood.'*"  *Id.* at 676 (emphasis added).  In other words, only because of express language in the policy at issue in *Pan Am Equities* was "Windstorm" enlarged to include flood-related damage.[5]

Although "Windstorm" in another policy could include flood and hail damage, in the specific context of the instant policy, it is a specific peril "associated with a Named Storm."  *See Fireman's Ins. Co. of Newark v. Weatherman*, 193 S.W.2d 247, 248 (Tex. Civ. App.—Eastland 1946, writ

---

[5] SCD also argues that the "Windstorm deductible" in the *Pan Am Equities* decision is relevant to the Landmark policy.  It is true that the policy in *Pan Am Equities* was also issued by Lexington Insurance Company, the primary insurer in this case.  But the Landmark policy is *not* the Lexington policy, and the Landmark policy specifies the extent to which it incorporates any definitions from the Lexington policy.  It does not incorporate the "Windstorm" deductible.  SCD points to the "Maintenance of Primary Insurance" section as incorporating the Windstorm deductible, but that section in no way expands the perils insured by the Landmark policy.  That section, in relevant part, states: "In respect of the perils *hereby* insured against, this Policy is subject to the same warranties, terms, and conditions . . . as are contained in [the Lexington policy]." (emphasis added).

ref'd n.r.e.) (interpreting "windstorm" to  refer to damage caused by "a wind of unusual violence" that "must assume aspects of a storm" (internal quotation marks omitted)).  "Windstorm" did not expand the Landmark policy to include all the perils wrought by Hurricane Harvey.

Under its plain language, the Landmark policy does not apply to the type of damage that the SCD property sustained in connection with Hurricane Harvey.  Therefore, we REVERSE the district court's grant of summary judgment in favor of SCD and RENDER judgment for Landmark.