# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30026

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2015

Lyle W. Cayce
Clerk

ESMA L. ETIENNE,

     Plaintiff - Appellant

v.

SPANISH LAKE TRUCK & CASINO PLAZA, L.L.C.,

     Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:11-CV-213

Before JOLLY, HIGGINBOTHAM, and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Esma Etienne was a waitress and bartender at Spanish Lake Truck & Casino Plaza. When she was not promoted to a managerial position, she filed this Title VII suit, alleging that Bernard Terradot, Spanish Lake's general manager, had failed to promote her to the position because of her race and color.[1] To support her allegations, Etienne submitted the affidavit of Jeannene

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

[1] As a preliminary to this suit, Etienne filed the required charge with the EEOC, in which she claimed that a "less qualified" white former co-worker was hired as manager

No. 14-30026

Johnson, a former manager of Spanish Lake. The affidavit states that Terradot allocated responsibilities to Spanish Lake employees according to the color of their skin, that Terradot would not let "a dark skinned black person handle any money," and that Terradot and his wife on several occasions told Johnson "that they thought Esma Etienne was too black to do various tasks at the casino." The district court granted summary judgment to Spanish Lake, holding that Etienne had failed to make out a prima-facie case of discrimination.[2] For the reasons stated below, we VACATE and REMAND.

We review de novo a district court's grant of summary judgment. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In undertaking this inquiry, we view the evidence in the light most favorable to

instead of her. On appeal, Spanish Lake contends that we lack jurisdiction to hear Etienne's current contentions, since they allege primarily the assertions of the former manager's affidavit—not Etienne's qualifications relative to the person hired. This argument, however, is meritless: our jurisdiction depends on "the scope of the EEOC investigation which can reasonably be expected to grow out of" Etienne's EEOC complaint, *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (internal quotation marks omitted), and the affidavit is within the scope of an investigation which would be expected to grow out of an EEOC complaint regarding a discriminatory failure to promote because of race.

Etienne was eventually discharged by Spanish Lake, and her suit originally included an additional claim that this discharge constituted retaliation in violation of Title VII. The district court dismissed this claim on summary judgment, and, in *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484 (5th Cir. 2013), we affirmed.

[2] Notably, the district court seemed to pass over Etienne's claim that she was discriminated against on the basis of both race *and* her dark color because, when granting summary judgment, it relied heavily on the fact that most of the managers at Spanish Lake were of the black race. Though we have never explicitly recognized "color" as a separate, unlawful basis for discrimination by employers, the text of Title VII is unequivocal on the matter. *See* 42 U.S.C. § 2000e-2(a) (prohibiting employment discrimination against an individual because of the individual's "race, *color*, religion, sex, or national origin").

2

the nonmonvant; that is, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks omitted).

A Title VII plaintiff may make out a prima-facie case of discrimination using either direct or circumstantial evidence. *See Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994). If the plaintiff presents only circumstantial evidence, then she must prove discrimination inferentially using "[t]he three-step *McDonnell Douglas-Burdine* 'minuet.'" *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994). If, however, the plaintiff presents direct evidence of discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)).[3]

To determine whether comments in the workplace constitute "direct evidence," or only "stray remarks," we have looked to four factors: whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4)

---

[3] Neither party explains whether or how this dichotomy between direct and circumstantial evidence was affected by the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *Compare, e.g., Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (interpreting *Desert Palace* to "answer a disputed question from [*Price Waterhouse*], clarifying that direct evidence . . . is not needed to shift the burden of proof to the employer to affirmatively show that it would have treated the plaintiff the same in the absence of the unlawful motivating factor; circumstantial evidence of the motivating factor can be enough") *and Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310, 312 (5th Cir. 2004) (holding that, under *Desert Palace*, "the direct evidence requirement has been removed from mixed-motive cases," justifying the use of an "integrated," "modified *McDonnell Douglas* approach" (internal quotation marks omitted)), *overruled on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009); *with, e.g., Jones*, 427 F.3d at 992 (continuing to apply the direct-evidence requirement without mentioning *Desert Palace*).

No. 14-30026

related to the challenged employment decision. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001). In applying this test, our ultimate focus is on whether the comments prove, "without inference or presumption, that race was *a* basis in employment decisions" in the plaintiff's workplace. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). Notably, when the proximity in time of the comments to the challenged employment decision is unclear, we have found the proximity-in-time factor to be satisfied when the comments were "routine," *see Brown*, 989 F.2d at 861, or "made over a lengthy period of time." *See Wallace*, 271 F.3d at 222.

This discussion leads us to Etienne's argument that Johnson's affidavit constitutes "direct evidence" of discrimination. According to Johnson's affidavit, Terradot—Spanish Lake's general manager who was charged with filling the managerial opening—allocated responsibilities to Spanish Lake employees according to the color of their skin, did not allow "dark skin black person[s to] handle any money at" Spanish Lake, and told Johnson "on several occasions" that he "thought Esma Etienne was too black to do various tasks at the casino." This last statement, if made, is direct evidence that color is likely to have played a role in Spanish Lake's employment decisions. Put differently, "no inference or presumption" is required to get from this statement—that Etienne was "too black to do various tasks at the casino"—to the conclusion "that race was *a* basis in employment decisions" made at Spanish Lake with regard to Etienne. *See Jones*, 427 F.3d at 993. The statement is therefore, for purposes of summary judgment, direct evidence of discrimination.

Applying the four factors, to which we have earlier referred, for distinguishing direct evidence from stray remarks yields the same conclusion. *See Wallace*, 271 F.3d at 222. Factors (1), (3), and (4) are easily satisfied: Terradot's comments explicitly reference Etienne's color; they were made by Terradot, the person who indisputably had authority over the managerial

4

No. 14-30026

hiring process; and they are related to the challenged employment decision in that they have to do with who can handle money at Spanish Lake, a task that neither side disputes is required of the manager position. Only the second, proximity-in-time factor raises a concern, since Johnson's affidavit is unclear *when* Terradot made his comments. Nonetheless, the affidavit alleges that the comments were made "*on several occasions*," that Terradot "*determined*" his employees' duties based on the color of their skin, and that Terradot "*would not allow*" a dark-skinned black person to handle money at Spanish Lake. Taken together, these statements constitute a justifiable inference that Terradot's comments were not isolated or anomalous, but instead were in keeping with a "routine," ongoing practice of allocating employment duties by skin color. *See Brown*, 989 F.2d at 861. This being the summary-judgment stage, that inference is one we reasonably draw; and so the four-factor consideration reinforces the conclusion that Johnson's affidavit constitutes direct evidence of discrimination.

Finally, the comments described in Johnson's affidavit are strikingly similar to comments that we have held before to constitute direct evidence of discrimination. In *Jones*, another case involving race discrimination in a casino, the plaintiff alleged that he was not hired as a poker dealer because he was of the black race. 427 F.3d at 991. According to other employees, the casino's poker-room manager stated that he did not hire black dealers because "good old white boys don't want black people touching their cards," and "maybe [he'd] been told not to hire too many blacks in the poker room." *Id.* at 993. The *Jones* court held that these statements "clearly and explicitly indicate[d] that decision maker(s) in the poker room used race as a factor in employment decisions, which is by definition direct evidence of discrimination." *Id.* Like the statements in *Jones*, Terradot's comments indicate that Etienne was disqualified from performing certain tasks at the casino because of her skin

5

No. 14-30026

color. Moreover, they do so "clearly and explicitly." Thus, under *Jones*, Terradot's comments are "by definition direct evidence of discrimination." *Id.*

Summary judgment, then, was appropriate only if Spanish Lake carried its burden of showing that it would have made the same decision absent the evidence of discrimination. Although the district court did not reach this issue (holding that Etienne had not made out a prima-facie case), it is clear that Spanish Lake did not carry its burden. Spanish Lake contends that it did not hire Etienne because the person it hired was more qualified than Etienne. But to prevail on summary judgment, Spanish Lake must do more than merely identify a legitimate basis for its decision—it must show that any reasonable jury would conclude that it would have made the same decision absent the discrimination. *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417–18 (5th Cir. 2003). Etienne has offered evidence that she too was qualified,[4] and this evidence, alongside her direct evidence that she was not even *considered* for the opening on account of her skin color, is surely enough to create a genuine issue for trial.

For these reasons, the district court's grant of summary judgment is VACATED, and the case is REMANDED for proceedings consistent with this opinion.

VACATED and REMANDED.

---

[4] For instance, the record shows that Etienne had worked at Spanish Lake for more than three years at the time she was not promoted; that she had trained the person eventually hired as manager when the latter was originally hired to work at Spanish Lake as a waitress; and that, according to Etienne and Johnson, at least, Etienne's performance at work was excellent and exceeded the "requirements for her position."