# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2022

Lyle W. Cayce
Clerk

No. 21-10133

FELESIA HAMILTON; TASHARA CALDWELL; BRENDA JOHNSON; ARRISHA KNIGHT; JAMESINA ROBINSON; DEBBIE STOXSTELL; FELICIA SMITH; TAMEKA ANDERSON-JACKSON; TAMMY ISLAND,

*Plaintiffs—Appellants*,

*versus*

DALLAS COUNTY, *doing business as* DALLAS COUNTY SHERIFF'S DEPARTMENT,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-313

Before HIGGINBOTHAM, STEWART, and WILSON, *Circuit Judges*.

CARL E. STEWART, *Circuit Judge*:

Plaintiffs-Appellants appeal the district court's order granting Defendant-Appellee's motion to dismiss under Rule 12(b)(6). Because Plaintiffs-Appellants did not plead an adverse employment action, as required under this circuit's Title VII precedent, we AFFIRM.

No. 21-10133

## I.   Background

Plaintiffs-Appellants are nine female detention service officers working at the Dallas County Jail who are employed by Defendant-Appellee Dallas County Sheriff's Department. Dallas County ("the County") provides two days off per week for its detention service officers. Most officers prefer to schedule their days off on weekends. Before April 2019, Plaintiffs-Appellants' schedules were based on seniority. However, in or around April 2019,[1] a gender-based scheduling policy went into effect and only male officers were given full weekends off whereas female officers were allowed two weekdays off or one weekday and one weekend day off. Plaintiffs-Appellants alleged that "[w]hen [they] asked the [s]ergeant how scheduling was determined, he stated that it was based on gender" and explained that it would be safer for the male officers to be off during the weekends as opposed to during the week.[2] Plaintiffs-Appellants reported the new scheduling policy to their sergeant, lieutenant, chief, and human resources, all of whom declined to modify the policy. The policy remained in place at the time Plaintiffs-Appellants filed their complaint.[3]

Plaintiffs-Appellants filed a discrimination complaint with the Equal Employment Opportunity Commission and received Notice of Right to Sue Letters. On February 10, 2020, Plaintiffs-Appellants filed suit against the County for violations of Title VII and the Texas Employment Discrimination

---

[1] The record does not contain the exact date on which the County implemented the scheduling policy at issue, so it is unclear whether the old or new policy was in effect during the month of April 2019. We assume the new scheduling policy was implemented at some point in April 2019.

[2] Relevant here, male and female officers perform the same tasks, and the number of inmates during the week is the same as the number on weekends.

[3] On appeal, the County asserts that the gender-based scheduling policy was temporary. Neither party has stated if or when the policy was revoked.

No. 21-10133

Act (the "TEDA"). Specifically, they alleged that the County "engaged in the practice of discrimination with respect to the terms and conditions of Plaintiffs' employment."

On June 4, 2020, the County filed a motion to dismiss under Rule 12(b)(6) arguing that Plaintiffs-Appellants failed to state a plausible claim for relief because they did not suffer an adverse employment action. On June 25, 2020, Plaintiffs-Appellants filed a response arguing that the gender-based scheduling policy harmed their work conditions and made their jobs objectively worse. Alternatively, they requested leave to amend.

The district court granted the County's motion to dismiss. The district court acknowledged that the County's facially discriminatory scheduling policy demonstrated unfair treatment and that it was plausible that the denial of full weekends off made Plaintiffs-Appellants' jobs objectively worse. Nonetheless, "the binding precedent of this [c]ircuit compel[led]" it to hold that Plaintiffs-Appellants failed to state a claim upon which relief could be granted because they did not plead an adverse employment action. The district court granted Plaintiffs-Appellants leave to amend their complaint, but because Plaintiffs-Appellants did not amend their pleadings within thirty days, it ultimately dismissed the action with prejudice. This appeal followed.

On appeal, Plaintiffs-Appellants argue that the district court erred by considering whether the County's scheduling policy constituted an adverse employment action rather than applying the statutory text of Title VII and the TEDA. They further contend that the scheduling policy qualifies as an adverse employment action.

## II.    Standard of Review

This court reviews dismissals for failure to state a claim de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d

616, 622 (5th Cir. 2018). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    Discussion

This case presents a unique factual scenario because the employment action at issue applies to all the members of the protected group and the employer does not dispute its discriminatory intent. Instead, the County argues that Plaintiffs-Appellants failed to plead an adverse employment action. The rule of orderliness and existing Fifth Circuit precedent support the County's argument, and thus we must affirm.

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Texas's Title VII analogue, the TEDA, similarly makes it an "unlawful employment practice" for an employer to "discriminate[] . . . against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of sex. Tex. Lab. Code Ann. § 21.051(1) (1993).

A plaintiff who has exhausted her administrative remedies may prove a claim of intentional discrimination either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence." *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). This court evaluates Title VII employment discrimination cases built on circumstantial

evidence under the framework set forth in *McDonnell Douglas Corp. v. Green*.[4] *McCoy*, 492 F.3d at 556. Under that framework, the plaintiff must first establish a prima facie case of discrimination by showing that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.[5] *Id.*

The Supreme Court has held, however, that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *accord Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). When a plaintiff presents direct evidence of discrimination, "the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015), *as revised* (Feb. 3, 2015) (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). This court has defined direct evidence as "evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). To determine whether comments in the workplace constitute "direct evidence," or only "stray remarks," this court has looked to four factors: whether the comments are (1) related to the

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

[5] If the plaintiff makes a prima facie showing, the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its employment action. *McCoy*, 492 F.3d at 557. If the employer meets this burden of production, the burden shifts to the plaintiff to ultimately prove that the employer's proffered reason is instead a pretext for the real discriminatory purpose. *Id.*

No. 21-10133

plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *Etienne*, 778 F.3d at 476. All four factors are satisfied here. "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." *Herster*, 887 F.3d at 185 (quoting *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994)).

Here, Plaintiffs-Appellants pled that their supervising sergeant stated that the scheduling policy in question was based on gender. Accepting these facts as true, Plaintiffs-Appellants have alleged direct evidence of discrimination because the sergeant's statement about the policy shows a discriminatory motive on its face. In other words, no inference or presumption is required to get from the sergeant's statement—that the new scheduling policy was based on gender—to the conclusion that Plaintiffs-Appellants were denied full weekends off because they are women.[6] As mentioned, this court rarely encounters direct evidence cases because employers seldom admit to a discriminatory motive as the sergeant did here.

The conduct complained of here fits squarely within the ambit of Title VII's proscribed conduct: discrimination with respect to the terms, conditions, or privileges of one's employment because of one's sex. Given the generally accepted meaning of those terms, the County would appear to have violated Title VII. *See Threat v. City of Cleveland*, 6 F.4th 672, 677–78 (6th Cir. 2021) (collecting definitions of "terms" and "privileges" contemporaneous to the enactment of Title VII). Moreover, the Supreme

---

[6] *See Etienne*, 778 F.3d at 476, *as revised* (Feb. 3, 2015) ("Put differently, 'no inference or presumption' is required to get from this statement—that Etienne was 'too black to do various tasks at the casino'—to the conclusion 'that race was a basis in employment decisions' made at Spanish Lake with regard to Etienne.").

Court has explained that section 703(a) of Title VII refers to "actions that affect employment or alter the conditions of the workplace," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006), and that "the particular days of the week during which employees shall be required to work are subjects well within the realm of 'wages, hours, and other terms and conditions of employment,'" *Loc. Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Jewel Tea Co.*, 381 U.S. 676, 691 (1965). Surely allowing men to have full weekends off, but not women, on the basis of sex rather than a neutral factor like merit or seniority, constitutes discrimination with respect to the terms or conditions of those women's employment. And the benefits that come with seniority,[7] here, the ability to request one's preferred days off, should amount to a privilege of employment.

Yet we are bound by this circuit's precedent, which requires a Title VII plaintiff to establish a prima facie case of discrimination by showing, *inter alia*, that she "suffered some adverse employment action by the employer." *McCoy*, 492 F.3d at 556. Further narrowing this requirement, we have held that "[a]dverse employment actions include only *ultimate employment decisions* such as hiring, granting leave, discharging, promoting, or compensating," *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (emphasis added), *cert. denied*, 141 S. Ct. 160 (2020) (quoting *McCoy*, 492 F.3d at 559). This rule first arose in the Fifth Circuit nearly twenty-seven years ago when, in *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995), we adopted dictum from a Fourth Circuit case involving a different

---

[7] "In the area of labor relations, 'seniority' is a term that connotes length of employment. A 'seniority system' is a scheme that allots to employees ever improving employment rights and benefits as their relative lengths of permanent employment increase." *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 900 F.2d 903, 907 (6th Cir. 1990).

No. 21-10133

provision of Title VII. *See id.* at 781–782 ("Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.") (citing *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981).[8] Today, our circuit precedent and the rule of orderliness[9] constrain us to conclude that because the denial of weekends off is not an ultimate employment decision, the district court correctly granted the County's motion to dismiss on the grounds that Plaintiffs-Appellants did not plead an adverse employment action. *See Hernandez v. Sikorsky Support Servs., Inc.*, 495 F. App'x 435, 438 (5th Cir. 2012) (per curiam) (unpublished) (holding that a plaintiff whose supervisor denied her seniority-based preference in shift scheduling suffered no adverse employment action); *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 475 (5th Cir. 2004) (per curiam)

---

[8] The Fourth Circuit has since declined to adopt the dictum from *Page*. *See Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001) ("[W]e cannot interpret the quotation from *Page* as improperly restricting § 2000e–3 adverse employment action to 'ultimate employment decisions.'").

[9] "Under our rule of orderliness, we may not overrule a prior panel decision absent an intervening change in the law, such as a statutory amendment or a decision from either the Supreme Court or our en banc court." *Thompson v. Dall. City Att'y's Off.*, 913 F.3d 464, 467 (5th Cir. 2019).

No. 21-10133

(unpublished) (holding that changes of work hours and the denial of day shifts are not adverse employment actions).[10]

The Sixth and District of Columbia Circuits recently confronted a similar dilemma. In *Threat v. City of Cleveland*, the city used a seniority-based bidding system to assign shifts to its Emergency Medical Service ("EMS") captains. 6 F.4th at 676. The captains' collective bargaining agreement allowed the city's EMS Commissioner to transfer up to four captains to a different shift, even if it conflicted with a captain's first choice. *Id.* Such was the case when the bidding process generated a schedule in which only black captains would staff a day shift. *Id.* The Commissioner then replaced one of the black captains with a white captain to "diversify the shift," but that white captain had a conflict that prevented him from working that shift. *Id.* The rebidding process yielded a similar result, with the Commissioner again reassigning a black captain to "create diversity." *Id.* Fed up with the race-based scheduling assignments, the captains brought a Title VII discrimination claim against the city. *Id.* Following discovery, the parties

---

[10] *Hernandez* and *Mylett*, though unpublished, both reflect the binding circuit precedent that we confront in this case. Both cases cite *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998), for the proposition that changes of hours and the denial of particular shifts are not adverse employment actions. But the relevant holding from *Benningfield* appeared in the context of a First Amendment retaliation claim, not a Title VII employment discrimination claim. There, in evaluating the plaintiff's First Amendment retaliation claim, this court stated that "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Benningfield*, 157 F.3d at 376 (quoting *Pierce v. Tex. Dep't of Crim. Just.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). It then explained that the *Pierce* court "declined to expand the list of actionable adverse actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." *Id.* (citing *Pierce*, 37 F.3d at 1150). Accordingly, the definition of "adverse employment action" for First Amendment retaliation purposes is not identical to the definition for Title VII employment discrimination purposes. Thus, the repeated reliance on *Benningfield* and other First Amendment retaliation cases in our Title VII employment discrimination analyses has created doctrinal confusion.

cross-moved for summary judgment, and the district court granted the city's motion on grounds that the captains could not show a "materially adverse employment action." *Id.* at 676–77. The Sixth Circuit reversed, reasoning that its precedent construing Title VII to only cover "materially adverse employment actions" was intended to be shorthand for the statutory text and to incorporate a *de minimis* exception. *Id.* at 678–79, 682. Addressing its line of cases stating that shift changes do not count as materially adverse employment actions under Title VII, the court further explained that it had never set forth a categorical rule that actionable discrimination claims could never be based on shift changes. *Id.* at 679. It thus held that the captains had stated a cognizable claim under Title VII. *Id.*

Similarly, in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), the en banc court overruled its precedent holding that the denial or forced acceptance of a job transfer was actionable under Title VII only if the employee suffered "objectively tangible harm." *Id.* at 872. It reasoned that this rule was a "judicial gloss that lacks any textual support" from Title VII. *Id.* at 875.

The Fourth Circuit, while still requiring a showing of an adverse employment action, hews closer to the text of Title VII. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). It defines an adverse employment action as "a discriminatory act which 'adversely affect[s] "the terms, conditions, or benefits" of the plaintiff's employment.'" *Id.* It has made clear that "[c]onduct short of 'ultimate employment decisions' can constitute adverse employment action." *Id.* at 375–76.

Given these holdings by our sister circuits, our circuit's deviation from the text of Title VII leaves us with the proverbial circuit split. Unshackled by our precedent limiting Title VII to apply only to "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, or compensating an employee," Plaintiffs-Appellants would still

No. 21-10133

have to satisfy their attendant burdens for a Title VII claim. However, they would remain in court with the opportunity to do so, especially at the Rule 12(b)(6) stage where they must only plead a plausible claim to relief. But sympathetic as we may be to Plaintiffs-Appellants' position, the rule of orderliness forbids us from "overrul[ing] a prior panel decision absent an intervening change in the law, such as a statutory amendment or a decision from either the Supreme Court or our en banc court." *Ortega Garcia v. United States*, 986 F.3d 513, 532 (5th Cir. 2021). Only the en banc court can do that.

The strength of the allegations here—direct evidence of a workforce-wide policy denying full weekends off to women in favor of men—coupled with the persuasiveness of *Threat*, *Chambers*, and *James*, make this case an ideal vehicle for the en banc court to reexamine our ultimate-employment-decision requirement and harmonize our case law with our sister circuits' to achieve fidelity to the text of Title VII.

## IV.    Conclusion

Bound by the rule of orderliness, we AFFIRM the district court's order granting the County's motion to dismiss.