# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 5, 2023

Lyle W. Cayce
Clerk

———————

No. 22-30556

———————

Shane M. Wilkinson,

*Plaintiff—Appellant*,

*versus*

Pinnacle Lodging, L.L.C.; My Hospitality Services, L.L.C.; Laura Rosa; Russell Block; Yogesh Patel,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-3427

———————————————————

Before Dennis, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

This civil case arises out of an employment dispute at a Hampton Inn between the hotel's former manager, his supervisors, and the owner. The district court granted summary judgment to the defendants on all the former manager's claims. We reverse in part, affirm in part, and vacate in part.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30556

I.

A.

Yogesh Patel owns and operates a hotel conglomerate through two companies: Pinnacle Lodging, LLC, and My Hospitality Services, LLC ("MHS"). Russell Block is the Director of Operations overseeing Patel's hotel conglomerate. One hotel owned and operated by Patel's conglomerate is the Hampton Inn in Covington, Louisiana.

In 2017, Shane Wilkinson, a white male, was hired as a front-desk clerk at the Covington Hampton Inn. In 2018, Block promoted Wilkinson to general manager of the hotel. Wilkinson received a significant pay raise along with the promotion.

In August 2019, Laura Rosa, a white female, was promoted to regional manager for Louisiana and became Wilkinson's direct supervisor. Rosa reported to Block who reported to Patel.

Four months after Rosa began supervising Wilkinson, in December 2019, Rosa and Block (with permission from Patel) terminated Wilkinson. In the months leading up to Wilkinson's termination, Rosa (Wilkinson's direct supervisor) made multiple inappropriate comments concerning race and sex to Wilkinson and others.

During their first meeting, Rosa told Wilkinson—in front of one of Wilkinson's subordinates, Chasity Anthony, the head of housekeeping—that she was going to replace Wilkinson and his staff with "Hispanics" because they work "cheaper and faster." ROA.704, 521, 523. Anthony avers that Rosa "pretty regularly" said she was going to replace the Hampton Inn staff with "Mexicans" because "Mexicans work better." ROA.704–05.

During their second meeting, Rosa told Wilkinson that "male GMs don't make good general managers and as far as [Rosa] was concerned,

2

[Wilkinson] shouldn't be here." ROA.513. Anthony, who was present, says she remembers Rosa saying this and that Rosa "frequently" made these kinds of comments to the Hampton Inn staff. ROA.846. Separately, Hilton inspectors came to inspect the property in November 2019 to assess compliance with Hilton's corporate standards. Ahead of the inspection, Wilkinson told Rosa that he had learned the inspector would be a male. In response, Rosa told Wilkinson that this was disappointing because if the inspector had been a woman Wilkinson could have worn "tight pants" to distract her and score higher points. ROA.1038–39.

Paul Lanclos, a Hispanic man, further testified that Rosa told him that she thought "Hispanic workers are better workers" and got "more accomplished" than non-Hispanics; that she preferred Hispanic workers to anyone else; and that she said to him (in Wilkinson's presence) that Wilkinson was a "pioneer" in the hotel industry because "females are more capable" than men. ROA.1059–60. Wilkinson, Anthony, and Lanclos each testified that Rosa made these comments routinely over the four-month period that she supervised Wilkinson. Rosa denied making any of these comments.

Wilkinson testified in his deposition that he complained to Block about Rosa's racist and sexist comments before his termination. Block said he would deal with the matter, but Wilkinson never saw evidence that he did. Further, Anthony testified that she was present at a meeting between Block and Wilkinson where Wilkinson complained about Rosa's racist comments regarding replacing Wilkinson and his staff with Mexicans. Anthony testified that Block just "laughed and changed the subject." ROA.847. Additionally, the Hampton Inn's assistant manager also testified that Wilkinson told her he complained to Block that Rosa was "targeting" him because of his race and sex around September or October 2019. ROA.874. Rosa approached

Wilkinson after he complained to Block about her and said, "[y]ou're not getting rid of me." ROA.1041–42.

Wilkinson's termination letter, written by Rosa and Block, includes four reasons for his termination: Wilkinson purportedly failed to contribute to rate management; failed to complete some of the tasks required prior to a corporate inspection in November 2019; threatened to quit twice; and lacked overall hotel knowledge. Wilkinson testified that he refused to sign the termination letter because it was inaccurate.

## B.

Wilkinson sued Rosa, Block, Patel, Pinnacle Lodging, and MHS (collectively, "Pinnacle"), alleging the following claims: (1) race, sex, and national-origin discrimination and hostile work environment under Title VII, Section 1981, and the Louisiana Employment Discrimination Law ("LEDL") against Pinnacle Lodging and MHS; (2) retaliation under Title VII, Section 1981, and the LEDL against Pinnacle Lodging and MHS; (3) whistleblower retaliation under the Louisiana Environment Whistleblower Act ("LEW") and the Louisiana Whistleblower Act ("LWA") against Pinnacle Lodging and MHS; (4) race discrimination, hostile work environment, and retaliation under Section 1981 against Laura Rosa; and (5) retaliation under Section 1981 against Patel and Block.

The district court found that Wilkinson proffered direct evidence of race and sex discrimination. But the court granted summary judgment to Pinnacle anyway. Wilkinson timely appealed.

We review *de novo* the district court's grant of summary judgment to Pinnacle. *See Landmark Am. Ins. Co. v. SCD Mem'l Place II, LLC*, 25 F.4th 283, 285 (5th Cir. 2022). And we apply the same summary judgment standard on appeal that the district court applied below. *Id.*

II.

We (A) reverse on Wilkinson's discrimination claims, (B) affirm on Wilkinson's hostile work environment claims, and (C) vacate on Wilkinson's retaliation claims and Louisiana Whistleblower claims.

A.

First, Wilkinson's discrimination claims. Title VII, § 1981, and LEDL discrimination claims are all analyzed under the Title VII framework. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (§ 1981); *La Day v. Catalyst Tech, Inc.*, 302 F.3d 474, 477 (5th Cir. 2002) (LEDL).

Title VII makes it unlawful for employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination through either direct or circumstantial evidence. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "If the plaintiff presents only circumstantial evidence, then she must prove discrimination inferentially using the three-step *McDonnell Douglas*" burden-shifting framework. *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 475 (5th Cir. 2015) (citation and quotation omitted). But if the plaintiff proffers direct evidence of discrimination, there is no need to resort to *McDonnell Douglas* because, by definition, direct evidence "proves the fact of intentional discrimination without inference or presumption." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328–29 (5th Cir. 1994) (citation and quotation omitted).

Direct evidence discrimination cases are "rare." *Equal Emp. Opportunity Comm'n v. Ryan's Pointe Houston, LLC*, No. 19-20656, 2022 WL

4494148 at *3 (5th Cir. Sept. 27, 2022) (quoting *Rutherford v. Harris Cty.*, 197 F.3d 173, 180 n.4 (5th Cir. 1999)). That is because it will be the rare case where "statements or documents" will "show on their face that an improper criterion served as a basis—not necessarily the sole basis, but *a* basis—for the adverse employment action." *Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 255 (5th Cir. 2020) (quotation omitted) (emphasis added) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 993 (5th Cir. 2005)).

To determine whether comments in the workplace constitute direct evidence of discrimination, this Court looks to four factors: "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision." *Etienne*, 778 F.3d at 476; *accord Wallace*, 271 F.3d at 222. "Comments that do not meet these [four] criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). A court's "ultimate focus" in applying this direct-evidence test "is on whether the comments prove without inference or presumption that [the protected characteristic] was *a* basis in employment decisions' at [the plaintiff's workplace]." *Herster v. Bd. of Sup. of La. State Univ.*, 887 F.3d 177, 187 (5th Cir. 2018) (quotation and citation omitted).

Turning to the comments at issue in this case, Rosa told Wilkinson that she wanted to replace him and his staff with "Hispanic" employees because they "work cheaper and faster"; and Rosa said, "male GMs don't make good general managers, and as far as [she was] concerned, [Wilkinson] shouldn't be here." ROA.1100–01.

We agree with the district court that Rosa's comments to Wilkinson meet each of this Court's four direct-evidence criteria. First, the comments

relate directly to Wilkinson's race and sex by negative implication. *See Eaglin*, 801 F. App'x at 255–56 (involving similar comments about replacing employee with Hispanic employee). Second, Rosa made the comments close in time to the relevant employment decision—less than four months before Wilkinson's termination. Third, Rosa was Wilkinson's immediate supervisor who (along with Block) made the decision to terminate him. Fourth, Rosa's comments "related to the challenged employment decision" because she said she wanted to "replace" Wilkinson and that she thought Wilkinson "shouldn't be here," respectively. *See Ryan's Pointe Houston*, 2022 WL 4494148 at *5 (concluding that there was sufficient direct evidence of discrimination where all four factors were met); *Jones v. Robinson Property Group, LP*, 427 F.3d 987 (5th Cir. 2005) (same). Just like in *Ryan's Pointe* and *Jones*, Rosa's comments—which meet all four of our direct evidence factors—make this a quintessential "direct evidence" case.

Under this Court's longstanding approach to direct evidence cases, where "the plaintiff presents direct evidence of discrimination, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Etienne*, 778 F.3d at 475 (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)); *accord Ryan's Pointe*, 2022 WL 4494148, at *4 (citing *Hamilton v. Dallas Cnty.*, 42 F.4th 550, 554 (5th Cir. 2022)).

At this point, we part ways with the district court. After concluding that Rosa's comments constituted direct evidence of discrimination, the district court went on to conclude that Pinnacle met its burden to show by a preponderance that Wilkinson would have been terminated regardless of the forbidden factor. For support, the district court pointed to (1) the "consistent" and "uncontroverted testimony" of Wilkinson's supervisors and (2) the termination letter. ROA.1102–05.

But here is the problem: The supervisors' testimony as to the nondiscriminatory reasons Wilkinson was fired was neither consistent nor uncontroverted.

First, Wilkinson's supervisors *inconsistently* testified about why Wilkinson was fired. All three supervisors (Rosa, Block, and Patel) averred in their interrogatory answers that Wilkinson was fired for "poor job performance," specifically because: (1) the Hampton Inn failed its corporate inspection in November 2019; (2) he failed to remediate mold in the hotel's rooms; (3) he had frequent absences; and (4) he threatened to quit. In her interrogatory answer, Rosa added (5) "Wilkinson did not act to boost the morale of Hampton Inn employees." ROA.714.

In their depositions, however, the supervisors changed their tunes. Block said the "top" reason Wilkinson was fired was a new one: (6) his refusal to engage in "rate management." ROA.327. Rosa flatly contradicted her earlier interrogatory answer at her deposition when she admitted Wilkinson was not fired because of the failed inspection in November 2019. Instead, Rosa testified that her reason for firing Wilkinson was (7) "just based off of his overall knowledge and his performance as a GM, and that would make a decision to terminate him." ROA.714. Patel, for his part, said Wilkinson's biggest performance issue was his work absences. But Block testified in his deposition that he had approved all Wilkinson's absences and that this was not the reason Wilkinson was fired. Taken together, these examples demonstrate that Wilkinson's supervisors did not testify consistently throughout the case about why Wilkinson was terminated.

Second, there is record evidence *contradicting* the supervisor's purported nondiscriminatory reasons for firing Wilkinson. Take the reasons one at a time: (1) As to the November 2019 corporate inspection, Wilkinson points to testimony from Ashley Vanderhoff, the hotel's assistant general

manager, that the Hampton Inn never passed its inspection—either before Wilkinson's tenure or after—because the hotel lacked the required internet infrastructure. (2) As to the mold problem, Patel and Rosa stated Wilkinson was not to blame for it. (3) As to Wilkinson's absences, Block testified that he approved them and that the absences were not the reason Wilkinson was fired. (4) As to Wilkinson's threats to quit, Wilkinson testified in his verified complaint that he made those threats to Block and only *after* Block refused to stop Rosa's "discrimination and harassment." ROA.81. (5) And as to Wilkinson's effect on morale, two Hampton Inn employees, Chasity Anthony and Demille Topps, testified that Wilkinson "was a very good General Manager" and was "great to work with" and he always "tried to keep his people working and—and when they tried to quit, he tried to talk them out of it." ROA.592, 841, 846.

Further, Wilkinson counters Pinnacle's explanations by pointing to the complete absence of any record of discipline the entire time he served as general manager. That is so despite the existence of a progressive discipline policy at Hampton Inn requiring two written warnings prior to termination.

Given the inconsistencies in the supervisors' testimony about why Wilkinson was fired and the contradictory evidence undercutting those reasons, the district court erred in holding that "any reasonable jury would conclude" that Pinnacle would have fired Wilkinson "absent the discrimination." *Etienne*, 778 F.3d at 477. We therefore conclude Pinnacle has failed to carry its summary judgment burden and reverse the district

No. 22-30556

court's grant of summary judgment to Pinnacle on Wilkinson's discrimination claims.[1]

B.

Next, the hostile work environment claims. We analyze Wilkinson's federal and state hostile-work-environment claims under the Title VII standard. *See DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

To survive summary judgment on a hostile work environment claim, a plaintiff must create genuine dispute of material fact that "(1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action." *Wantou v. Wal-Mart Stores Tx., LLC*, 23 F.4th 422, 433 (5th Cir. 2022) (quotation omitted).

For harassment to affect a term, condition, or privilege of employment, it "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation omitted). Here, there is no evidence that Rosa's comments negatively affected Wilkinson's work environment at all. In fact, the evidence points the other way. Wilkinson himself testified that he "laughed at" Rosa's comments and "moved on." ROA.523. We have previously held that hostile work environment claims fail even when there has been severe harassment where there is a lack of evidence indicating that the alleged harassment interfered with the plaintiff's work. *See Brooks v.*

---

[1] Because Wilkinson prevails under our longstanding approach to direct evidence cases, we find it unnecessary to address Wilkinson's argument in his reply brief that we should revisit that standard.

*Firestone Polymers, LLC*, 640 F. App'x 393, 399–400 (5th Cir. 2016) (concluding that (1) racial slurs and "black faces" drawn in workplace bathroom stalls were insufficient to sustain a prima facie case of a hostile work environment where, in part, there was no evidence that the drawings interfered with plaintiff's work; (2) upside-down American flag to protest President Obama's election was insufficient to constitute hostile work environment where "no evidence tied this incident to interference with [the plaintiff's] work"; and (3) noose placed inside of plaintiff's hard hat did not establish a prima facie case where plaintiff presented no evidence as to how it affected the terms and conditions of his employment). In the absence of evidence indicating how Rosa's comments affected Wilkinson's ability to perform his job duties, we affirm the district court's grant of summary judgment on Wilkinson's hostile work environment claim.

## C.

Finally, the retaliation claims. Because the district court relied on its erroneous analysis of Wilkinson's discrimination claims to conclude that Wilkinson could not establish pretext on his retaliation claims, we vacate the district court's grant of summary judgment on those claims and remand for the district court to reconduct the pretext analysis for Wilkinson's retaliation claims.[2]

\* \* \*

For the foregoing reasons, we REVERSE the district court's judgment in part as to Wilkinson's discrimination claims, AFFIRM in part as to Wilkinson's hostile work environment claims, VACATE in part as to

---

[2] For the same reason, we also vacate the district court's grant of summary judgment on Wilkinson's Louisiana Whistleblower claims.

No. 22-30556

Wilkinson's retaliation and Louisiana Whistleblower claims, and REMAND for further proceedings.