# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2023

Lyle W. Cayce
Clerk

No. 22-10107

Allied World National Assurance Company,

*Plaintiff—Appellant*,

*versus*

Old Republic General Insurance Corporation; Oscar
Renda Contracting, Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-431

Before Stewart, Willett, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:*

The question presented is whether Old Republic General Insurance Corporation has a duty to defend its insured under a Texas commercial general liability policy. The district court said no. We say yes and reverse.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10107

I.

Tarrant Regional Water District hired IPL Partners to work on an integrated pipeline in Venus, Texas. IPL, in turn, hired Oscar Renda Contracting, Inc., to perform excavation and pipelaying duties on the project. Nabor Machuca-Mercado worked on the pipeline project as a laborer for Oscar Renda.

In its contract with IPL, the Water District agreed to provide insurance for the project. Both Old Republic General Insurance Corporation and Allied World National Assurance Company issued policies to cover the project.

Old Republic issued two relevant policies. First, Old Republic issued a commercial general liability ("CGL") policy to the Water District that covered up to $2 million per accident involving certain enrolled contractors on the pipeline project including Oscar Renda. Second, Old Republic issued an employers' liability ("EL") policy directly to Oscar Renda that covered up to $1 million per accident.

Allied World issued an excess liability policy to the Water District, which provided $5 million in coverage excess of the CGL policy and EL policy.

One day Machuca-Mercado disappeared from the pipeline worksite. Minutes later Machuca-Mercado was found buried up to his head in pea gravel. Tragically, he suffocated to death.

Machuca-Mercado's children sued Oscar Renda (Machuca-Mercado's employer) for negligence in Texas state court. *See Valera v. Oscar Renda Contracting, Inc.*, Case No. 18-8351-431 (Dist. Ct., Denton County, TX). Specifically, the *Valera* complaint alleges that Oscar Renda was negligent, grossly negligent, negligent *per* se, and violated OSHA standards

No. 22-10107

in failing to properly hire, train, retain, and supervise its employees, agents, and independent contractors, and in failing to maintain a safe jobsite. The *Valera* complaint further alleges that Oscar Renda is vicariously liable for the negligent acts of its employees and seeks $20 million in wrongful death, survival, and punitive damages.

Oscar Renda tendered the *Valera* suit to Old Republic for defense and indemnity. Old Republic denied coverage to Oscar Renda under the CGL policy based on the CGL policy's employer liability exclusion but acknowledged that Oscar Renda's EL policy covers the *Valera* suit.

Allied World filed this declaratory judgment action against Old Republic, and the parties cross-moved for summary judgment. The district court granted partial summary judgment to Old Republic because it concluded that the CGL policy excludes coverage for the *Valera* suit. Allied World timely appealed.

## II.

We review *de novo* the district court's grant of partial summary judgment to Old Republic and apply the same standards on appeal that the district court applied below. *See Landmark Am. Ins. Co. v. SCD Mem'l Place II, LLC*, 25 F.4th 283, 285 (5th Cir. 2022).

It's undisputed that the preliminary conditions for coverage under the CGL policy are met. The narrow question on appeal is whether the district court correctly concluded that an exclusion to the CGL policy applies to the *Valera* suit.

Texas law controls that question. *See Lyda Swinerton Builders, Inc. v. Ok. Sur. Co.*, 903 F.3d 435, 444 (5th Cir. 2018). Under Texas law, the duty to defend obligates an insurer to "defend the insured in any lawsuit that alleges and seeks damages for an event potentially covered by the policy."

*Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (quotation omitted). "The duty to defend depends on the language of the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 & n.28 (Tex. 2009). Whether an insurer has a duty to defend is a question of law. *See Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009).

Texas courts apply the ordinary rules of contract interpretation to insurance policies. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). Under those interpretive rules, a policy's "words and phrases" are "given their plain and ordinary meaning." *Aggreko, LLC v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 688 (5th Cir. 2019). "An interpretation that gives each word meaning is preferable to one that renders one surplusage." *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 23–24 (Tex. 2015). "No one phrase, sentence or section [of a contract] should be isolated from its setting and considered apart from other provisions." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). Instead, courts must interpret the policy as whole. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

If a contract is unambiguous, it will be enforced as written. *Don's Bldg. Supply*, 267 S.W.3d at 23. A contract provision is not ambiguous merely because the parties disagree about its scope. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012). But when "a contract is susceptible to more than one reasonable interpretation," courts "resolve any ambiguity in favor of coverage." *Don's Bldg. Supply*, 267 S.W.3d at 23. Further, under Texas law, "exceptions and limitations of liability are even more strictly construed against the insurer." *W. Heritage Ins. Co. v. Magic Years Learning Ctrs. & Child Care, Inc.*, 45 F.3d 85, 88 (5th Cir. 1995).

No. 22-10107

Two provisions in the CGL policy are important: the Exclusion and the Endorsement.

*The Exclusion.* In the CGL policy's main coverage form, there is a section titled "Section 2. Exclusions, e. Employer's Liability." The Exclusion states that the CGL policy does not apply to "bodily injur[ies]" to:

> (1) An "employee" of the insured arising out of and in the
>
>    course of:
>
>> (a) Employment by the insured; or
>>
>> (b) Performing duties related to the conduct of the
>>
>>    insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that
>
>    "employee" as a consequence of paragraph (1) above.

*The Endorsement.* A related endorsement near the end of the CGL policy is entitled "Fellow Employee Wrap-Up Exclusion Deleted." Relevant here, the Endorsement modifies the Exclusion. The text of the Endorsement reads:

> With respect to Supervisory personnel, SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, e. Employer's Liability, is amended to include:
>
>> This paragraph e does not apply to "bodily injury" to an "employee" when such "bodily injury" is caused by another "employee."

We first (A) explain why reversal is required under our reading of the CGL policy. Then we (B) explain why reversal is also required under the district court's reading of the CGL policy.

### A.

The CGL policy requires reversal based on its text and structure. All agree that the Endorsement amends the Exclusion to include an additional sentence (the "Carveout Sentence"). The Carveout Sentence states that the Exclusion does not apply to a "bodily injury" to one "employee" that was "caused by" another "employee." Put differently, the Endorsement narrows the Exclusion by carving out a class of bodily injuries—employee injuries caused by other employees.

The Endorsement also includes a prefatory phrase that reads "[w]ith respect to Supervisory personnel." But it's clear from the Endorsement's structure that that prefatory phrase has no effect whatsoever on the CGL policy. That's because the Endorsement amends the Exclusion by adding the *indented text* only to the Exclusion. The prefatory phrase, by contrast, is located at the beginning of an *un-indented* line of text that ends by stating the Exclusion is "amended to include" followed by a colon and then the indented Carveout Sentence. The effect of the Endorsement couldn't be plainer: Only the indented language *after* the colon gets added to the policy. The prefatory phrase is located *before* the colon. So the prefatory phrase "[w]ith respect to Supervisory personnel" is not added to the policy and has no legal effect.

Under our reading, the Endorsement's sole addition to the Exclusion is the Carveout Sentence. The modified Exclusion—with the added text from the Endorsement italicized—reads like this:

**2. Exclusions**

This insurance does not apply to:

\*     \*     \*

No. 22-10107

### e. Employer's Liability

"Bodily injury" to:

> (1) An "employee" of the insured arising out of and in the course of:
>
> > (a) Employment by the insured; or
> >
> > (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

*This paragraph e does not apply to "bodily injury" to an "employee" when such "bodily injury" is caused by another "employee."*

The practical effect is that any on-the-job bodily injuries to employees caused by other employees receive coverage under the CGL policy post-Endorsement.

Under our reading, this is an easy case. The allegations in the *Valera* complaint make it plain that the underlying litigation involves a bodily injury to an employee that was caused by another employee. First in the "Parties" section, the *Valera* complaint alleges: "Whenever in this petition it is alleged that [Oscar Renda] committed any act or omission, it is meant that [Oscar Renda]'s officers, directors, vice-principals, agents, servants, and/or

employees committed such act or omission." Next in the "Cause of Action" section the complaint alleges all the different ways Oscar Renda (a.k.a. its employees per the previous allegation) was negligent: "[Oscar Renda]'s gross negligence, negligence, and or negligence per se, were a proximate cause of Mr. Mercado's injuries and death, including but not limited to, to wit: In failing to properly hire, train, retain, and supervise employees . . . [listing many other ways Oscar Renda was negligent] . . . . Each of these acts and omissions, whether taken singularly or in any combination constitute negligence, which proximately caused the injuries and death of the decedent." Taken together, these allegations implicate the CGL policy and require reversal under our reading of the policy.

## B.

The district court and the parties assume that the Endorsement's prefatory phrase "[w]ith respect to Supervisory personnel" limits the application of the Carveout Sentence. But even on that view, we still must reverse. That's for three reasons: (1) Allied World's proposed reading is a reasonable one; (2) it does not create surplusage; and (3) we construe any ambiguity in favor of coverage.

### 1.

Allied World reads the prefatory phrase as limiting the Carveout Sentence to underlying suits alleging that the conduct of supervisory personnel contributed to the employee's injury. This reading is reasonable.

The parties don't dispute the definitions and grammatical function of the words "with respect to Supervisory personnel." They agree that the phrase "with respect to" means "referring to," "concerning," or "with reference or regard to something." *Evanston Ins. Co. v. Atofina Petrochemicals Inc.*, 256 S.W.3d 660, 666 n. 19 (Tex. 2008) (citing THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1640 (2d ed. 1987); THE

No. 22-10107

Compact Edition of the Oxford English Dictionary 2512 (1971)). And they agree that "supervisory" modifies "personnel" and that "personnel" refers to "the body of people employed in any work, staff." *Personnel*, Oxford American Dictionary 498 (1st ed. 1980); *Personnel*, Webster's II New College Dictionary 841 (3d ed. 2005). The issue "is not the precise grammar of the phrase, but how it functions in the context" of the whole agreement. *See Don's Bldg. Supply*, 267 S.W.3d at 23.

Given the agreed-on definitions, the most natural way to read the disputed phrase (assuming, of course, that it has any effect at all) is that the Endorsement carves out from the Exclusion lawsuits that "concern supervisory personnel." Even though it came to the opposite conclusion, the district court seems at times to read the Endorsement this way too. For example, in describing "the result" of the Endorsement, the district court stated that "if a supervisor *allegedly contributes to a fellow employee's injury*, the supervisor qualifies as an insured and the CGL policy covers liability for that injury." (Emphasis added). This statement is more in line with Allied World's understanding of the prefatory phrase than Old Republic's. Assuming the prefatory phrase applies at all, Allied World's proposed reading is at least reasonable.

2.

Further, Allied World's proposed interpretation does not create surplusage. That's because the result of the Endorsement under Allied World's view is that there is coverage in instances—like the *Valera* suit— where a supervisor allegedly contributes to a fellow employee's injury and the employer is sued.

Old Republic's reading of the prefatory phrase, by contrast, does create surplusage. Old Republic would read it as limiting the Carveout

Sentence to underlying lawsuits that name supervisory personnel as defendants. But Old Republic effectively concedes that under its preferred reading, the Exclusion doesn't apply to individual supervisory personnel in the first place. Even so, it argues that the preference to avoid surplusage can be overcome where "it is impossible to avoid the redundancy without rendering other language superfluous." Red Br. 28 (citing *Whole Women's Health v. Jackson*, 642 S.W.3d 569, 581–82 (Tex. 2022)). Here, of course, it's not impossible to avoid the surplusage—as Allied World's interpretation demonstrates.

3.

As we held above, the CGL policy clearly covers the *Valera* suit. But even assuming that the CGL policy is "susceptible to more than one reasonable interpretation," we "resolve any ambiguity in favor of" Allied World and coverage. *Don's Bldg. Supply*, 267 S.W.3d at 23; *accord Landmark Am. Ins.*, 25 F.4th 283, 286 (5th Cir. 2022) ("When an insurance contract is ambiguous—meaning that it is susceptible to more than one reasonable interpretation—we adopt the interpretation that affords coverage."). Further, given that the disputed provision is an exclusion, Texas law dictates that it should be "even more strictly construed against the insurer." *Magic Years*, 45 F.3d at 88.

\* \* \*

For these reasons, we REVERSE the district court's grant of partial summary judgment to Old Republic and REMAND for further proceedings consistent with this opinion.