# Supreme Court of Texas

No. 24-0132

Privilege Underwriters Reciprocal Exchange,
*Petitioner*,

v.

Jeff Mankoff and Staci Mankoff,
*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued September 10, 2025**

JUSTICE LEHRMANN delivered the opinion of the Court.

This case concerns the interpretation of the term "windstorm" in a homeowners insurance policy and how a tornado fits into that interpretation. Specifically, the parties dispute whether a policy deductible applicable to covered losses caused by "Windstorm or Hail," which the policy does not define, unambiguously applies to damage caused by a tornado. We hold that it does. We therefore reverse the court of appeals' judgment and reinstate the trial court's summary judgment for the insurer.

# I. Background

In 2019, a tornado damaged the home of Insureds Jeff and Staci Mankoff. Following the tornado, it "likely" rained for approximately two minutes. The damaged property was covered by a homeowners insurance policy issued by Insurer Privilege Underwriters Reciprocal Exchange. Insureds submitted a claim for damages to their property, but Insurer paid only a portion of the claim. Explaining that the tornado qualified as a windstorm, Insurer maintained that the claim was therefore subject to the policy's $87,156 "Windstorm or Hail Deductible," which provided in relevant part: "In the event of direct physical loss to property covered under this policy caused directly or indirectly by windstorm or hail, the Windstorm or Hail deductible listed on your Declarations is the amount of the covered loss for dwelling, other structures and contents that you will pay." (Emphasis omitted.) The insurance policy does not define "windstorm."

Insureds sued for breach of contract, alleging that the damage to their home was not caused by a windstorm and that Insurer breached the policy by applying the deductible to the amount owed on their claim. The parties filed cross-motions for summary judgment that turned on the interpretation of "windstorm." Insureds argued that "windstorm" denotes a peril distinct from a tornado, while Insurer maintained that "windstorm" is a broad term that unambiguously encompasses a tornado. The trial court granted Insurer's motion for summary judgment, denied Insureds' motion, and rendered a take-nothing judgment against Insureds.

2

A divided court of appeals reversed and rendered judgment for Insureds. 708 S.W.3d 706, 708 (Tex. App.—Dallas 2024). In doing so, the court concluded that "the 'Windstorm and Hail Deductible' is ambiguous because the term 'windstorm' is undefined and subject to more than one reasonable meaning." *Id.* at 716. The court was persuaded by Insureds' argument that dictionary definitions, media coverage, and various statutory provisions indicate that "windstorm" could mean "a storm with damaging winds that may or may not be accompanied by precipitation, but [which] does not include a tornado." *Id.* at 711. The court of appeals therefore rejected Insurer's argument that the common, ordinary meaning of "windstorm" unambiguously includes a tornado. It likewise rejected Insurer's arguments that various dictionary definitions of the term, as well as a definition approved by a 1946 court of appeals decision, necessarily encompass a tornado. *Id.* at 713–14. After concluding the term "windstorm" was ambiguous as used in the policy, the court of appeals adopted the construction of the exclusionary provision favorable to Insureds. *Id.* at 715–16.

The dissenting justice would have affirmed the trial court's summary judgment, concluding that a tornado is unambiguously a windstorm "subtype." *Id.* at 722 (Miskel, J., dissenting). Examining dictionary definitions of "windstorm," the dissent noted that "[t]he consistent thread throughout" the definitions "is that a windstorm is a storm with violent winds, and a tornado is marked by violent winds." *Id.* Given this plain meaning, the dissent concluded that "it is not reasonable to deny that a tornado is a kind of windstorm." *Id.*

3

Insurer petitioned this Court for review, arguing that the court of appeals (1) incorrectly held that the term "windstorm" is ambiguous and (2) created false ambiguity by relying on inappropriate sources to discern ordinary meaning. We begin by setting out the standard of review and the legal principles underlying the dispute before we turn to analyzing the policy's terms.

## II. Standard of Review & Legal Principles

We review summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). As the parties do not dispute the facts, we review the cross-motions for summary judgment by determining the legal question presented. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Id.*; TEX. R. CIV. P. 166a(c).

"Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "When a contract's meaning is disputed, our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). Whether a contract is ambiguous is a question of law. *Nat'l Union Fire Ins.*, 907 S.W.2d at 520.

"In contract law, the terms 'ambiguous' and 'ambiguity' have a more specific meaning than merely denoting a lack of clarity in language." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015). If a written policy "is so worded that it can be given a definite or

4

certain legal meaning, then it is not ambiguous." *Nat'l Union Fire Ins.*, 907 S.W.2d at 520. But if the language "is subject to two or more reasonable interpretations, it is ambiguous." *Id.*

Should we conclude that the language is ambiguous, "we must resolve the uncertainty by adopting the construction that most favors the insured." *RSUI*, 466 S.W.3d at 118. As the term at issue here appears in a limitation on coverage, "we must do so 'even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

### III. Analysis

With these principles in mind, we turn to the question of whether a tornado unambiguously qualifies as a windstorm for purposes of determining whether the applicable policy's windstorm deductible applies. Insurer argues that "windstorm" is not ambiguous given its plain meaning—a storm with strong and violent wind, which encompasses a tornado. By contrast, Insureds contend that "windstorm" is ambiguous because there is more than one reasonable ordinary meaning of the term, including one that excludes a tornado.

When an insurance policy does not define a term, we give the "language its plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning." *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009). As the policy does not indicate that the parties intended a technical meaning of the terms to control, "we must give the policy's

5

words their plain meaning." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). To do so, "we typically look first to . . . dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017).

Dictionary definitions of the term "windstorm" are markedly consistent. Merriam-Webster defines it as "a storm marked by high wind with little or no precipitation."[1] The American Heritage Dictionary similarly defines the term as "[a] storm with high winds or violent gusts but little or no rain."[2] Webster's New World College Dictionary's definition is "a storm with a strong wind but little or no rain, hail, etc.,"[3] while the Collins English Dictionary's comparable definition is "a storm with heavy wind but little or no precipitation."[4]

The parties emphasize favorable elements of these definitions to argue that their proposed interpretation of the term controls. Insurer maintains that the "common theme" is "a storm whose main feature is strong, violent wind," which therefore includes a tornado. Insureds, by

---

[1] *Windstorm*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/windstorm (last visited Feb. 12, 2026).

[2] *Windstorm*, The AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://ahdictionary.com/word/search.html?q=windstorm (last visited Feb. 12, 2026).

[3] *Windstorm*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (5th ed. 2016).

[4] *Windstorm*, COLLINS ENGLISH DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/windstorm (last visited Feb. 12, 2026).

contrast, focus on the "little or no precipitation" aspect of the definitions. Insureds argue that the precipitation language serves a limiting function to exclude tornadoes, such as the one that damaged their home, because tornadoes are precipitation events.[5]

The common thread running through dictionary definitions of "windstorm" is a storm with violent, strong winds but little or no precipitation. *See City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 184 (Tex. 2022). A tornado falls within these definitional boundaries. Dictionaries consistently define a "tornado" as a violent and destructive movement of wind.[6] Indeed, some dictionaries explicitly define a

---

[5] In their briefing, Insureds maintain that because the specific tornado that damaged their home was followed by two minutes of rain, the tornado did not qualify as a windstorm. At oral argument, Insureds' argument shifted. Counsel instead argued that a tornado is a "categorically different kind of storm" that cannot meet the "little or no precipitation" element of a windstorm because "the storm that creates the tornado has heavy precipitation."

[6] *See Tornado*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/tornado (last visited Feb. 12, 2026) ("a violent destructive whirling wind accompanied by a funnel-shaped cloud that progresses in a narrow path over the land"); *see also Tornado*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=tornado (last visited Feb. 12, 2026) ("[a] violently rotating column of air extending from a cumulonimbus cloud to the ground, ranging in width from a few meters to more than a kilometer, with destructive winds up to 510 kilometers (316 miles) per hour or higher"); *Tornado*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (5th ed. 2016) ("a violently whirling column of air, with wind speeds of about 100 to 300 miles per hour, extending downward from a cumulonimbus cloud").

tornado as a type of windstorm.[7]  These definitions confirm that the key feature of a tornado is the violent, rotating wind.

Undoubtedly, some tornadoes occur amidst broader weather events that may not be classified as windstorms because of significant precipitation.[8]  However, the classification of the accompanying weather event in which a tornado forms has no bearing on whether the tornado itself is a windstorm.  Rather, a tornado is merely one of multiple elements that may or may not be part of a particular weather event.  A tornado is a windstorm in and of itself, and this is true regardless of whether it is a subset of a broader storm involving precipitation.  Stated another way, a weather event may not qualify as a windstorm depending on the amount of precipitation involved, but that has no effect on the fact that, based on the ordinary meanings of the terms, a tornado is always a windstorm.

---

[7]  *See Tornado*, COLLINS ENGLISH DICTIONARY, https:// www.collinsdictionary.com/us/dictionary/english/tornado (last visited Feb. 12, 2026) ("a localized, violently destructive windstorm occurring over land, esp. in the Middle West, and characterized by a long, funnel-shaped cloud extending toward the ground and made visible by condensation and debris").

[8] Insureds additionally assert that a windstorm references "a weather event with straight-line winds, also known as a 'derecho,'" which is distinct from the rotating winds that make up a tornado.  No definitions of "windstorm" distinguish between rotating winds and straight-line winds.  And notably, Merriam-Webster defines "derecho" as "a large fast-moving complex of thunderstorms with powerful straight-line winds that cause widespread destruction."  *Derecho*, MERRIAM-WEBSTER, https://www.merriam-webster. com/dictionary/derecho (last visited Feb. 12, 2026).  Despite a derecho's express association with thunderstorms, which could certainly be considered events with precipitation, Insureds maintain that a derecho is a windstorm while insisting that a tornado, which is not defined in reference to any form of precipitation, is not.

Considering the use of the term "windstorm" in statutes does not call that conclusion into question. *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 35. Neither the Insurance Code nor the Property Code defines "windstorm" or "tornado." *See Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivision Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 474–76 (Tex. 2022) (explaining how several statutes defined the term at issue, as well as related terms, and therefore provided guidance on ordinary meaning). Various sections of the Insurance Code and one section of the Property Code, however, list tornadoes and windstorms separately. Insureds contend that this indicates an ordinary meaning of "windstorm" that excludes a tornado. We disagree.

The provisions at issue include broad enumerated terms with ordinary meanings that encompass accompanying narrower terms. *See, e.g.*, TEX. INS. CODE § 252.003 (including terms such as "rain," "tornado," and "lightning" in a list that also includes "weather or climatic conditions"); *see also id.* §§ 542A.001(2)(C), 1806.102(c)(12)(A); TEX. PROP. CODE § 92.0562; TEX. INS. CODE art. 5.13(c). We have recognized that the Legislature may repeat itself for emphasis, *see In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001), and nothing in the cited provisions suggests that the lists confer an ordinary meaning that categorically excludes the narrower terms from the broader ones, *see EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 758 (Tex. 2020) ("Normally, when a term within a statute is susceptible to either a broad or a narrow meaning, we will presume that the broader meaning of the term is intended, being sensitive to the term's context in the statute."). There

9

is not a narrowing modifier in any of the provisions to indicate that the Legislature understood "windstorm" to exclude a tornado. *See generally Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 328 (Tex. 2017). We therefore do not find the usage of "windstorm" in the Insurance and Property Code provisions instructive in elucidating the ordinary meaning of the term.

Nor do court decisions indicate a different meaning. *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists*, 511 S.W.3d at 35. No Texas court has determined the ordinary meaning of "windstorm" as a matter of law. Insureds argue that in *Landmark American Insurance Co. v. SCD Memorial Place, L.L.C.*, 25 F.4th 283 (5th Cir. 2022), the Fifth Circuit concluded that a windstorm was distinct from other perils. At issue in *Landmark* was whether an insurance policy, which referred to "Perils Covered: Windstorm or Hail associated with a Named Storm," covered flood damage suffered during Hurricane Harvey. *Id.* at 287. The court's analysis was context-specific, and it did not address the ordinary meaning of "windstorm." Rather, it held that the term referred to one of the specific perils covered in *the policy at issue* and rejected the argument that because Hurricane Harvey was a windstorm, the policy covered all perils associated with it. *Id.* Further, the court did not conclude that a windstorm was a distinct storm from other perils; rather, it held that a windstorm was one of several perils that might exist within a given storm. *See id.*

Insurer, on the other hand, contends that *Fireman's Insurance Co. v. Weatherman*, 193 S.W.2d 247 (Tex. App.—Eastland 1946, writ ref'd n.r.e.), confirms that the ordinary meaning of "windstorm"

10

encompasses a tornado. In *Weatherman*, an insurance company appealed an adverse judgment in which the insured sought to recover for damage to his car caused by a windstorm. The trial court submitted the definition of "windstorm" to the jury as "something more than an ordinary gust of wind, no matter how prolonged, and though the whirling features which usually accompany tornadoes and cyclones need not be present, it must assume the aspect of a storm." *Id.* at 248. The insurer objected to the definition, but the court of appeals concluded that the definition was sufficient to "bring it within the policy sued upon." *Id.* at 249. In so holding, the court examined case law from other jurisdictions and noted that "it seems to be immaterial to a recovery under this character of policy whether there was much, little or no rainfall." *Id.* at 248. Like *Landmark*, *Weatherman* did not specifically address the ordinary meaning of "windstorm"; however, by defining it in the jury charge as "more than an ordinary gust of wind, however prolonged . . . [that] may or may not have the whirling features of a cyclone or tornado," the court necessarily concluded that a tornado qualifies as a windstorm. *Id.* at 248–49.

Several courts, including the *Landmark* court, have favorably cited *Weatherman*'s definition of "windstorm." *See, e.g.*, *Landmark*, 25 F.4th at 288; *Emps.' Fire Ins. Co. v. Howsley*, 432 S.W.2d 578, 580 (Tex. App.—Amarillo 1968, no writ); *Ins. Co. of N. Am. v. Pittser*, 399 S.W.2d 901, 904 (Tex. App.—Texarkana 1965, writ ref'd n.r.e.). This provides guidance that courts and parties over the years have viewed tornadoes as windstorms.

11

Insureds also point to other sources to support their contention that "windstorm" has an ordinary meaning that excludes a tornado. These include media coverage of weather events, the Encyclopedia Britannica, a meteorologist's expert opinion, and the American Meteorological Society's Glossary of Terms.[9] Assuming that these sources could be properly considered in evaluating ordinary meaning, none of them support an ordinary meaning of "windstorm" that excludes a tornado.

First, Insureds cite various media excerpts to argue that a windstorm, in common parlance, is a type of storm with straight-line winds that is therefore distinct from a tornado. However, the examples in these excerpts are consistent with the common thread running through the dictionary definitions of "windstorm" as a storm with violent, strong winds but little or no precipitation. Additionally, none of the media excerpts maintain or suggest any definitional distinction between windstorms and tornadoes.

The Encyclopedia Britannica entry for "windstorm," on which Insureds also rely, provides: "a wind that is strong enough to cause at least light damage to trees and buildings and may or may not be accompanied by precipitation."[10] This portion of the entry is similarly consistent with the common thread identified above. However, the entry

_____

[9] Insureds also cite information about "damaging winds" provided by the National Oceanic and Atmospheric Administration. This information does not reference the term "windstorm" and is therefore not helpful in determining the ordinary meaning of the term.

[10] *Windstorm*, ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/science/windstorm (last visited Feb. 12, 2026).

12

continues by detailing additional information about typical windstorm attributes, such as wind speeds exceeding thirty-four miles per hour. At this point, the entry explains that tornadoes and tropical cyclones "are usually classified separately." As the Encyclopedia Britannica entry recognizes, not all windstorms are tornadoes, and the separate classification of "tornado" allows people to refer to the more specific term when applicable. *See* 708 S.W.3d at 722 (Miskel, J., dissenting). The separate classification, however, fails to confer an ordinary meaning of "windstorm" as a storm with damaging winds that *does not* include a tornado.

Finally, Insureds' expert meteorologist maintained that there is a meteorologically significant distinction between a windstorm and a tornado, such that a tornado is its own distinct event, separate from any wind event. For support, the meteorologist cited the American Meteorological Society's Glossary of Terms, which defines "windstorm" as "[a] storm in which winds (that could be damaging) are its most impactful or distinctive aspect. Windstorms may be accompanied by precipitation (e.g., during a downburst or derecho) or not (e.g., during a duststorm . . . .)."[11] As Insureds are not parties who agreed to a technical meteorological meaning controlling the undefined term, the expert's opinion provides little guidance, if any, in determining ordinary meaning. *See generally Exxon Mobil Corp. v. Ins. Co. of Pa.*, 568 S.W.3d 650, 657 (Tex. 2019). But even considering the opinion, the Glossary's

---

[11] *Windstorm*, AMERICAN METEOROLOGICAL SOCIETY, https://glossary.ametsoc.org/wiki/Windstorm (last visited Feb. 12, 2026).

supporting definition of "windstorm" is consistent with the thread identified across common dictionaries and does not exclude a tornado.

As explained, the fact that a windstorm and a tornado can be distinct events has no bearing on whether a tornado is included within the broader term "windstorm." Moreover, none of the authorities cited by Insureds indicate that a tornado is not a windstorm in and of itself. To the contrary, all authorities indicate the obvious: not all windstorms contain tornadoes, but all tornadoes are windstorms, regardless of whether the broader weather event includes precipitation.

Having considered the dictionary definitions of "windstorm," as well as the term's usage in other statutes and case decisions, we hold that the common, ordinary meaning of "windstorm" in an insurance policy unambiguously includes a tornado. The damage to Insureds' property was caused by a tornado, which is a type of windstorm. Therefore, Insureds' claim was subject to the policy's "Windstorm or Hail" deductible.

## IV. Conclusion

We hold that the term "windstorm," when undefined in a homeowners insurance policy, is not ambiguous and that its ordinary meaning encompasses a tornado. Accordingly, the trial court correctly granted summary judgment for Insurer on the ground that Insureds' covered claim is subject to the "Windstorm or Hail" deductible in their homeowners policy. We therefore reverse the court of appeals' judgment and reinstate the trial court's judgment.

                                                  _____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** February 13, 2026